## THE OGDENSBURGH, ROME AND CLAYTON RAIL ROAD COMPANY *vs.* FROST & SPRIGGS.

The provision in the general rail road act, requiring each subscriber to the articles of association to subscribe thereto " *his name*, place of residence and amount by him subscribed," does not call for an individual personal subscription by all the members of a partnership firm.

A subscription by a partnership name is a compliance with the act; especially where it appears that the subscription was made by one of the partners in the name of both, and the other subsequently ratified and confirmed it.

The remedy of a rail road company against a subscriber, in case of non-payment of the calls, by forfeiture of the stock, is only cumulative, and does not prevent an action for the installments, where power is given to the company to make calls and there has been a valid subscription to the stock.

A subscription to the capital stock of a rail road company, by which the subscriber agrees " *to take* the number of shares in said company" affixed to his

name, is equivalent to an express promise to pay for the stock whenever the calls shall be made; or if not, it raises an implied promise which is equally efficacious with one expressed.

The payment of ten per cent upon the subscription is not required to be made by each original subscriber to the capital stock, at the time of his subscription; nor is such payment a condition precedent to the right of action by the company, for calls.

If $1000 of stock for every mile of the proposed road is subscribed, and ten per cent paid thereon in good faith, before the articles are filed, that is sufficient. It is not material that there are some subscriptions upon which the ten per cent has not been paid.

The 4th section of the general rail road act, requiring every subscriber to pay the ten per cent in money, and forbidding the reception of any subscription without such payment, relates exclusively to proceedings for filling up the stock by means of new subscriptions, after the articles have been filed and the company has assumed an authorized corporate existence.

APPEAL by the defendants from a judgment rendered against them at the circuit. The action was brought to recover the amount of three several calls made upon the defendants' subscription to the capital stock of the plaintiffs' company. The cause was tried by the court, without a jury, and judgment in favor of the plaintiffs for the amount claimed.

*B. J. Beach*, for the plaintiffs.

*T. G. Frost*, for the defendants.

*By the Court*, BACON, J. The objection to the plaintiffs' right of recovery are scattered through the case as thickly as autumnal leaves, and there is an extensive array of authorities in the briefs which have been submitted to the court. But from an attentive perusal of the case, I think only three questions of any serious moment are made, which I shall proceed to consider and dispose of in as brief a manner as is consistent with their importance and a proper adjudication upon the rights of these parties respectively.

I. The subscription of Frost & Spriggs being in their partnership name and made by one partner, it is insisted was unauthorized by the rail road act and is therefore void; and this

Ogdensburgh, Rome and Clayton R. R. Co. v. Frost.

objection it is claimed applies to all the subscriptions by partners as well as by an association called the Rome and New York line. This is argued from the language of the act, which requires each subscriber to the articles to subscribe thereto "*his name*, place of residence and amount by him subscribed." It is claimed that this requisition can only be met by an individual personal subscription. If the language is to receive this strict and literal interpretation it is obvious that no subscription could ever be made by a female, nor by any corporate body, however fully authorized in other respects. It is well settled that the word "person" used in an act includes a corporation. (4 *Bing.* 669.) Within this liberal rule of construction, I do not doubt a subscription by a firm name is within the scope of the act, and especially since it appears in this case that the subscription was made by Spriggs in the name of both, and that Frost subsequently ratified and confirmed it. There is still another answer to this objection. The act requires $1000 of stock for every mile of the road to be subscribed before the articles can be filed. This, upon the assumed length of the proposed road in this case, would require a subscription of 1400 shares. In point of fact there are over 2000 shares subscribed, and rejecting all the subscriptions to which the defendants' exception applies, there are still more than 1500 shares subscribed for, and this more than satisfies the requirements of the act.

II. It is claimed that no action can be sustained to recover the installments of the stock for which calls have been duly made. There being no express promise to pay, the only remedy, it is insisted, is that provided by the 7th section of the general rail road act, consisting of a forfeiture of the stock. Whatever doubt may have heretofore existed on this point, I think it is now well settled that the remedy by forfeiture is only cumulative, and does not prevent an action for the installments where power is given to the company to make calls and there is a valid subscription to the stock. (*Northern R. R. Co.* v. *Miller*, 10 *Barb.* 269. 21 *Wend.* 273. *Troy and Boston R. R. Co.* v. *Tibbits,* 18 *Barb.* 297.) It is true that both remedies cannot

be pursued concurrently, and where the remedy by forfeiture is resorted to, the right of action to recover the installments is barred. (*Small* v. *Herkimer Man. Co.,* 2 *Comst.* 332.) But until this remedy is resorted to and the forfeiture enforced, the right to prosecute for the calls is in no respect impaired. It is urged, however, that this only applies to cases where there is an express promise to pay by the subscriber ; and it is alleged that there is no such obligation here. By the terms of the subscription the defendants signed the articles of association and agreed therein " *to take* the number of shares in said company" affixed to their names. In the *Northern R. R. Co.* v. *Miller,* cited *supra,* the subscription was in the same terms, and it was held by Judge Willard that it was equivalent to an express promise to pay for the stock as it should be called for, and if not, it raised an implied promise which was equally efficacious with an express one. The same principle is decided in *Spear* v. *Crawford,* (14 *Wend.* 20 ;) *Harlem Canal Co.* v. *Sexias,* (2 *Hall's S. C. Rep.* 505,) and *Hartford and New Haven R. R. Co.* v. *Kennedy,* (12 *Conn. Rep.* 509.) These and other cases which might be cited cover the whole ground, and establish the right of the plaintiff to maintain this action although another ancillary or concurrent remedy exists.

III. The third objection is that payment of ten per cent upon the subscription was a condition precedent to the right of action by the plaintiff, and that by the true construction of the act such payment is required to be made by each original subscriber at the time of his subscription. I am unable to see the propriety or necessity of this construction. The second section of the act provides as a necessary preliminary to the filing of the articles, that $1000 of stock for every mile of the proposed road shall be subscribed, and ten per cent paid thereon in good faith. There is no requirement here of a specific payment of ten per cent by each subscriber. If the ten per cent is paid it matters not from whom it is received ; for the protection of the public and good faith to future subscribers to the stock, if those are the objects to be secured, are equally effected by either mode. In this case, therefore, more than $1000 per mile having been

Ogdensburgh, Rome and Clayton R. R. Co. *v.* Frost

subscribed and ten per cent paid thereon before the articles were filed, it is not material that there were other subscriptions made upon which the ten per cent was not paid. Parkhurst's subscription may consequently be struck out altogether and it will not affect the result. No necessity requires that these payments should be made at the moment of subscription; for it may be that the boundary proposed by the act will never be reached and the necessary number of shares obtained. If the condition be complied with before the filing of the articles, that secures the object at which the statute aims, and provides the required indemnity. This conclusion, it seems to me, is not at all affected by the language of the fourth section. That section evidently contemplates and provides for a state of things after the articles have been filed and the company have assumed an authorized corporate existence. They are then allowed, if it be necessary to fill up their stock, to open books of subscription and receive subscribers thereto until the whole capital is secured. It is in connection with this proceeding and at this subsequent stage in the progress of the enterprise, that the requirement is made that every subscriber shall pay the ten per cent in money, and forbidding the reception of any subscription without such payment. No rule either of construction or of supposed public policy requires that this provision should be extended to the original subscribers to the articles; and the wording of the clause, not less than the position in which it is found, restricts its application to the fourth section and the proceeding therein provided for.

In opposition to this opinion we have been furnished by the counsel for the defendants with a manuscript opinion of Mr. Justice GRAY, of the sixth district, which is claimed as a clear and explicit authority for the construction insisted upon in the defendant's points. We have no occasion to dissent from that opinion, for it manifestly decides no such principle as is here contended for. A glance at the statement of facts which precedes the opinion will show that the subscription in that case was not by an original subscriber to the articles, but was one solicited and obtained by a director of the company, after the

corporation came into existence, and was therefore a case coming directly within the action and was subject to the provisions of the fourth section of the act. It decides nothing on the point we have been considering. The only other suggestion in support of the construction contended for, is an intimation by Justice Hand, in *The Troy and Rutland R. R. Co. v. Kerr*, (17 *Barb.* 601.) It is expressed in no stronger terms than a "perhaps" the defendant could not be considered a subscriber under the act of 1850, by his omission to pay the ten per cent, while admitting that no such requirement was made and no such precedent condition existed by the act of 1848. It is a passing remark merely, and evidently the result of no investigation beyond a momentary thought. It cannot be invoked as authority, in opposition to what appears to me, on reflection, the true construction of the act. As to the defendants in this case, I think the proof clearly warrants the conclusion that the payment was substantially made in compliance with the act.

There are other propositions which have been presented in the briefs, but they arise mainly out of those which have been considered, and do not require a separate discussion. If we are right in the conclusions herein expressed, the cause was properly disposed of at the circuit, and the judgment must be affirmed.

JEFFERSON GENERAL TERM, April 8, 1856. *Pratt, W. F. Allen* and *Bacon*, Justices.]