## CHAPPELL *vs.* CADY.

ERROR TO CIRCUIT COURT, JEFFERSON COUNTY.

Heard September 20, 1859.]     ·     [Decided December 14, 1859.

*Agent and Principal—Lien—Factor—Practice—Instructions.*

Where an agent has rendered services and advanced money in procuring certain shares of stock and interest scrip to be exchanged for railroad bonds, bearing interest, and claimed a lien upon the bonds for the services and amount expended, *held,* that he was entitled to retain the bonds until the amount due him was paid.

It is well settled as a rule of law that agents generally have a particular lien upon the property of their principals in their hands for the amount of their advances and services in respect to it. So a bailee has a lien for his services, where the property is enhanced in value by his services rendered upon it.

Where an agent receives one kind of chose in action, or representation of value, to be exchanged for another kind of chose in action, or better security, and he makes the exchange, he does not thereby lose his lien on the security; but for the purpose of the claim and lien it will be considered as the same thing first entrusted to the agent, and that the agent's services and advances have given it an additional value. In such a case the agent may be considered in the light of a factor, and entitled to the rights of such factor.

Where the charge of the court is generally correct, and if a party desire a particular charge given, it is necessary to ask the court to give the instruction desired, or to call the attention of the judge to it; and unless this be done, the appellate court will not notice the neglect.

*Lachner vs. Solomon et al.,* 9 Wis., 129, considered and approved.


This action was commenced to recover four bonds of $100 each, issued by the La Crosse & Milwaukee Railroad Company, for the purpose of retiring $400 of the capital stock of the Milwaukee & Watertown Railroad Company, which the defendant Cady detained. The answer denied the detention and claimed a lien upon the bonds for service as agent in procuring the issuing of the bonds to one Martin Stuifer, of whom the plaintiff purchased them.

On the trial the plaintiff proved the issuing of the bonds to Stuifer who had the shares. They bore 7 per cent. interest, were made payable to Cady or bearer, and delivered to Cady, by the order of Stuifer; also, he proved the sale of the bonds to the plaintiff, and a demand and refusal.

The defendant was sworn as a witness in his own behalf, and testified: In the year 1857 I was engaged in a general agency business in Watertown, in this county. I kept an office, bought and sold real estate, paid taxes on land, paid interest on school lands, and transacted such other business as was entrusted to me as agent for those having business. Stuifer called upon me at my office saying that he owned four shares of stock in the Milwaukee & Watertown Railroad Company, and some interest scrip, which he wished me to look up for him and get them exchanged for bonds of the La Crosse & Milwaukee Railroad Company. I wrote an order for the shares of Stock upon John L. Hathaway, which Stuifer signed, and enclosed it in a letter, with one dollar of

Chappell vs. Cady.

my own money, paid the postage on the letter and mailed it to John L. Hathaway, Milwaukee. I wrote several letters in relation to the shares of stock before I found them, paid postage on the letters, and made one journey to Jefferson to get one share of the stock, which was in possession of A. Fancel, of Jefferson. I had no other business at Jefferson but to get the share of stock. I hired a team and paid all expenses of the trip. I did not succeed in getting the stock converted into bonds until late in February, 1857. These are the same bonds for which this action is commenced. I charged twenty dollars for my services, and the money I paid out. The plaintiff told me that he had purchased the bonds of Stuifer. I told him if he would get an order for the bonds from Stuifer, and he or Stuifer pay my charges on them, he could have them. Stuifer never directed me to deliver the bonds to plaintiff.

I kept an office for the transaction of business, and Stuifer understood when he employed me that I worked for pay. The procuring of rail road bonds in exchange for rail road stock was in the regular course of my business as general agent. I never held said bonds except as agent for Stuifer, and only retained them for the purpose of getting my pay for services and money paid out, for which I claimed a lien upon them. I have at all times been ready to deliver the bonds to the person entitled to them, on the payment of my fees and charges.

The circuit judge charged the jury: "If the jury find from the proofs that the defendant, as agent of Stuifer, expended labor and money in giving these bonds their present shape and value, and these bonds came into his possession as such agent, the plaintiff cannot recover, unless the proof shows that defendant's lien for such money and labor has been paid, or the amount tendered to defendant before the commencement of this suit. If the jury find from the evidence that the defendant in the course of his business as agent, at the request of Stuifer, who was at the time owner of the four shares of stock, expended money and rendered services in sending forward these shares of stock and getting them exchanged for the bonds of the La Crosse & Milwaukee Railroad Company, and these bonds came into the possession of the defendant in the course of his said agency, then the defendant has a lien upon said bonds for the amount of the money and the value of the services so expended. And the

plaintiff cannot recover possession of said bonds unless the proof also shows that such lien had been paid or the amount thereof tendered to the defendant before the commencement of this suit. To which charge of the court the plaintiff excepted.

The jury found a verdict for the defendant, upon which judgment has been entered, and upon which this writ of error is sued out.

*Enos & Hall,* for plaintiff in error.

*Williams & Leonard,* for defendant in error.

*By the Court,* PAINE, J. The respondent in this case was a general agent for the buying and selling of real estate, paying taxes, interest, and negotiating such matters as might be intrusted to him. As such, he rendered services and advanced money in procuring certain shares of stock and interest scrip, to be exchanged for bonds of the La Crosse & Milwaukee Railroad Company, for one Martin Stuifer. The bonds were returned by the Company to the respondent; and while in his possession, Stuifer sold them to Chappell, who demanded them, and delivery being refused, brought this suit. The respondent claimed a lien for the money he had advanced in procuring them and the value of his services, and the only question in the case is whether he was entitled to such lien.

The general rule of the common law is well understood, that wherever a bailee has, by his labor, enhanced the value of property intrusted to him, he has a lien for his services. The rule, also, is equally well settled, that agents generally have a particular lien upon the property of their principals in their hands for the amount of their advances and services in respect to it, and this particular lien is favored in law. Story on Agency, ch. 14. Now, it seems to us that the lien claimed here comes within either the one or the other of these rules.

For, if the property represented by the bonds is to be regarded as the same property previously represented by the stock certificates surrendered, then it may well be said that the services and advances of the respondent imparted an additional value to it. For it was considered by the owner desirable to have the exchange effected. The company wished to retire the stock, and had offered to issue bonds in its place. And when the respondent, acting as an agent for such purposes, hunted up the shares of stock, expending his time and money in doing so, and then at the expense of further labor and money had the stock surrendered and the bonds issued for it, it is evident that he improved the property to whatever extent the bonds were more desirable than the stock; and that they were so, to some extent, must be presumed, from the fact that the owner employed an agent to effect the exchange. But the counsel for the appellant urges that to establish the lien within this rule, the labor must be bestowed on the identical property, and that the bonds cannot be said to be the same property as the stock. Perhaps technically they were not, and yet substantially they were. Suppose an agent takes accounts for collection, and by negotiation obtains better securities, he has made the claim so much more valuable, and his right to a lien ought not to turn upon so nice a question, as whether the new securities are identically the same as the old. Such strict construction would be inconsistent with the favor with which the law regards such claims for lien. And, if it was necessary, we think it would not be going beyond the spirit of the rule upon this subject, to say that the property here was the same interest represented first by the stock and then by the bonds, and that the respondent's services and advances gave it such additional value as it obtained from the change in the mode of represention.

But, if this was not so, then the facts would make the respondent a factor. The shares of stock were then property

of one kind, intrusted to him as an agent, to exchange or sell, for property of another, the bonds of the company. He made the exchange, and, in doing so, rendered services and advanced money. The property received was in his possession, and his right to the particular lien upon it, given to all factors in such cases, would seem undoubted. It is in accordance with both the dictates of justice and the rules of law. *Hollis vs. Claridge*, 4 Taunt., 807.

We do not think that the testimony of Meyer, that when he demanded the bonds, the respondent said he knew nothing of them, or had not got them, brings the case within the rule that where a party on demand claims no lien, but sets up a claim entirely different, he cannot afterwards rely on a lien. Here the respondent set up no claim whatever, but denied knowing anything about them, if Meyer's statement is true. But the respondent testified, and there is nothing to contradict it, that before the interview with Meyer, he had seen Chappell, told him he had the bonds, and was ready to deliver them on an order from Stuifer and the payment of his charges. It would not seem, after this, as though he could have seriously denied knowing anything about them. But the proper answer to this objection is, that there was no instruction asked upon the point. The charge of the court upon the general question of lien was correct. And although if the plaintiff insisted that the lien had been lost by the respondent's denying knowledge of the bonds, a further instruction might have been properly given upon that subject; yet, none having been asked, and nothing done to call the attention of the court below to the point, the judgment could not be reversed, for the reason that it was not given. *Lackner vs. Solomon & Conrad*, decided at this term, 9 Wis., 129.

The judgment is affirmed with *costs*.

DIXON, C. J., took no part in the decision of this case, as the same was tried before him at the circuit.