Stover and Fish, surviving administrators, &c. *vs.* Flack.

Where A., in pursuance of a parol authority from B. purchases stock in his own name, on the joint account of himself and B., the latter becomes the owner of one half of the stock, and liable to pay A. the amount advanced therefor.

No written assignment of the stock from A. to B. is necessary to render B. liable for his proportionate share of the purchase money.

Where A. buys and pays for stock at B.'s request, on joint account, under an agreement that B. shall pay him for the moneys advanced, A. holding the stock, in the mean time as a pledge for repayment, with a right to expose it for sale in the market, if upon notice B. refuses to pay for it, A. is not bound to sell the stock in market, if it be worthless, before commencing a suit against B. to recover the amount advanced on the purchase.

Such an agreement, though by parol, is not void by the statute of frauds.

Where one partner subscribes for stock for the benefit of both, signing his name individually, and not as trustee, he is not a trustee, within the provisions of the general act of 1848, relative to the formation of corporations, &c. (*Laws of* 1848, *ch.* 40, §§ 16, 24.)

Stover *v.* Flack.

THIS action it prosecuted by the plaintiffs, as surviving administrators of Peter Stover, deceased, to recover one-half of a subscription of $1000, made by the said Peter Stover to the capital stock of the Diamond Mills Manufacturing Company, in the month of May or June, 1852, and the further sum of $500, paid by the plaintiffs to discharge the debts of said company, under the statute making the stockholders liable for the debts of said company, on the 28th of February, 1859. The plaintiffs claim that said subscription was made for the joint benefit of the said Peter Stover and the defendant, by the authority of the defendant, and paid for on their joint account; that it was so purchased and paid for; that the defendant adopted the act, claimed to own half the stock, and received half the dividends; that he waived the formality of a subsequent writing which was contemplated by both, declaring the rights and interests of the parties. That Stover was to pay for the stock and hold the same for the joint benefit of both parties, and that the defendant was to become liable to said Stover for one-half of the amount advanced by him to pay for said stock. The defendant claimed that it was agreed between himself and Stover, that the latter was to take $1000 of the stock in question and pay for the same. That he, the defendant, was to pay to said Stover the interest upon one-half of the sum paid, and to receive one-half of the dividends to be declared thereon. That Stover, after notice to the defendant, might sell the said one-half of the stock in market to reimburse himself, and that in case it sold for less than par, the defendant was to pay him the deficiency, and if the same sold for more than par, the defendant was to have the surplus. That this arrangement was verbal, and the parties were to meet subsequently and reduce the same to writing and execute it, which was never done; and that Stover, although applied to by the defendant to execute the written agreement, refused to do so. The action was commenced March 22, 1859. The case was tried at a circuit court, held in Rensselaer county in June,

1861, before Justice PECKHAM and a jury. On the trial the plaintiff proved that the said Peter Stover subscribed and took $1000 of the stock of the Diamond Mills Manufacturing Company, organized under the general act of 1848. That the same was paid for by his estate. That the said company became insolvent. That on the 29th of September, 1858, judgment in favor of Deborah Powers, against the company, for $7992.57, was recovered, and execution issued thereon, and returned unsatisfied. That a circular was issued by the officers of the company to stockholders, showing the company to be insolvent upwards of $20,000, and that all its estate, real and personal, had been sold, and requiring each stockholder to pay upon the outstanding debts of the company, a sum equal to the amount of their respective subscriptions. That the plaintiffs, as the personal representatives of the said Peter Stover, on receiving said circular, and in obedience to its requirements, paid the further sum of $1000 towards discharging the debts of the said company, which said last mentioned sum was paid February 28, 1859. William Bradshaw, a witness for the plaintiff, testified as follows: "I was a member, a trustee, and the treasurer of the Diamond Mills Manufacturing Company; I know Peter Stover; this company bought flax of Stover and allowed him for the same upon his stock; on the 23d of March, 1853, I settled with his administratrix, &c., and at that time we had received $1272.82 in flax, and paid them the balance; I was present with the said Peter Stover and the defendant when they were talking about taking some stock in this company; the conversation was that Stover was to subscribe $1000, pay for it, and the defendant was to have one-half of it; the defendant to pay interest on the advance and receive one-half of the dividends on the stock; *the agreement was to be thereafter reduced to writing and signed by the parties;* it was further understood that if Stover desired to realize the money advanced, he might go into the market and sell the stock, after giving the defendant notice thereof; the defendant then to

have the right to pay the money advanced and take the stock, and if the stock was sold at less than par, the defendant was to pay the deficiency, and if it sold for more than par he was to have the surplus ; this conversation *was in May or June,* 1852 ; Stover died eight or nine months thereafter." "It was agreed between them that Stover was to subscribe $1000 and hold it, the defendant to pay interest on $500, and receive the dividends on $500 ; Stover to have the privilege of putting $500 of the stock into market after giving the defendant notice thereof, with the privilege of paying therefor at par and taking the stock ; that if the defendant did not take the same and it was so sold in market, the defendant was to pay to said Stover any deficiency between the price it sold for and the par value thereof, and was to have any excess realized on such sale beyond the par value thereof. *It was understood and agreed that they were thereafter to meet and have the agreement reduced to writing and signed by the parties.* There was nothing said about the defendant's being the owner of one-half of the stock except what was to be inferred from what I have stated on my cross-examination." "The defendant was to own one-half of the stock on the terms I have stated. It was mentioned that if Stover wanted the money he was to call on the defendant for it, and the defendant was to take the stock and pay the money ; if the defendant did not pay it, Stover was to sell the stock—or he might sell it—can't say which. I was the treasurer of the company. There never was any certificate filed in the county clerk's office that the stock had been subscribed and paid for." "My present impression is that the stock was to be sold upon defendant's default to pay for it." Thomas Newcomb, a witness for the plaintiff, testified as follows : "I reside in Albany ; know the defendant. I subscribed for twenty shares of the Diamond Mills Manufacturing Company's stock ; my subscription was the last one made. I had a conversation with the defendant with reference to his interest when I signed ; he said he had taken $500 worth through Peter Stover ; *that*

*Stover had subscribed for him and himself.* I conversed with him several times after.  Mr. Flack told me he had received a dividend on his stock while the company was in operation; *he told me he had received one pound of thread on his stock;* I got four pounds of thread on mine; *got it at the defendant's store.*  They told me at the mill that the thread dividend was made, and that my thread was at the defendant's store, and I called there and got it."  "He said he was to pay Stover for the use of the money and have the dividends.  Said he expected to make something, or he would not have taken it.  I am not sure that I remember all that was said.  *He told me in his store that he had received the pound of thread.*  I don't recollect the precise language.  I asked him if there was any thread from the company there for me.  He said there was four pounds.  He said he got one pound and I got four pounds; that was pretty much all that was said."  Albert E. Powers, a witness for the plaintiffs, testified as follows: "I was treasurer of this company when the stock was paid upon our certificate for the full amount of the stock; afterwards, and *on the 16th of March,* 1859, the original certificate was surrendered and canceled, and two new ones of $500 *each, paid* in its stead; one being issued to Lois Stover, administratrix, and the other to David H. Flack, the defendant.  This was done at Mrs. Stover's request; I delivered them to her."

On the 16th of March, 1859, the plaintiffs tendered to the defendant his certificate of stock, with an assignment thereof to him from Lois Stover, the administratrix, and demanded payment of $500 and the interest; which was refused.

John G. McMurray was one of those whom the defendant solicited to become stockholders.  He told Mr. McMurray, in or about 1855, *some three years after the death of the intestate,* that *"he and Stover had taken $1000 of its stock in Stover's name."*  David Judson testified that "a short time previous to Stover's death," the defendant told him "he had an opportunity of selling this stock to Mr. Ransom, and

that the reason he did not was that he had not got it. He said he had seen Stover about it, and that he put him off so that he could not get it.

The jury found a verdict in favor of the plaintiff, for $1374.32, and from the judgment entered thereon, and the order of the judge, denying a motion for a new trial, the defendant appealed.

*W. A. Beach,* for the appellant.

*J. K. Porter,* for the respondent.

*By the Court,* MILLER, J. Several important questions were raised by the defendant's counsel upon the argument of this cause, which I will proceed to consider.

I. It is urged that the agreement between the defendant and the intestate was not a legal and valid contract by which the defendant became the owner of one-half of the stock subscribed for, or liable to pay the moneys advanced for the same. The authority of the intestate to purchase the stock in his own name, on the joint account of himself and the defendant, I think was sufficiently established by parol, and a written instrument executed by the defendant was not necessary for that purpose. The intestate was acting for the benefit of both parties, and he was agent for the defendant in the purchase. In *Burr* v. *Wilcox,* (22 *N. Y. Rep.* 551,) it was held that one for whom stock had been purchased by an agent is a stockholder, although the stock has been apportioned to the agent, for the principal. (*See also McWhorter* v. *McMahan,* 10 *Paige,* 386; *Lawrence* v. *Taylor,* 5 *Hill,* 107.) The purchase of the stock having been made by due authority, for the joint benefit of the parties, although in the name of the intestate, the defendant was in fact the owner of one-half of it. The act of one of the parties being the act of both, no written assignment of the stock was necessary to make the defendant liable. It was not a mere beneficial interest to be

enjoyed at his pleasure or volition, but an obligation which he, through his agent, and as a joint owner, had assumed, and which made him liable to his copartner in the transaction, for his proportionate share. (*Bank of Rochester* v. *Monteath*, 1 *Denio*, 402. *Wright* v. *Hooker*, 6 *Seld.* 51.) The defendant never demanded a transfer of the stock, and although an assignment was actually tendered to him before suit brought, he declined to accept it. He certainly has no reason to complain if his own act has prevented an assignment.

II. It is said that the defendant was not liable to pay for the stock except upon a sale of it in market, upon notice. There is no such stipulation in the contract; nor do I find any thing to warrant that interpretation of it. I have already discussed the question as to how far the defendant was the owner of the stock under the agreement, and it is unnecessary to enlarge upon that subject. It is however proper to observe in this connection, that there is a wide and manifest distinction between a contract where the right to sell stock is reserved for the benefit of the pledgee, and one where a sale of property is made containing a covenant that the vendor shall do certain acts which will materially enhance the value of property sold, and the failure to perform which must necessarily produce great loss and injury. In the latter case the party injured may very properly avail himself of a failure to perform when prosecuted for the consideration money. In the former I do not discover any good ground upon which the reservation of a right to sell can be considered as a condition precedent. The reservation was made for the benefit of the intestate, to secure him for the moneys advanced, and not as a condition of the defendant's liability. It was but a cumulative remedy, without impairing any other rights. (*Troy Turnpike Co.* v. *McChesney*, 21 *Wend.* 296. *Ogdensburgh R. R. Co.* v. *Frost*, 21 *Barb.* 541. *Northern R. R. Co.* v. *Miller*, 10 *id.* 271. *Troy and Boston R. R. Co.* v. *Tibbits*, 18 *id* 297.) In case the intestate did sell, the defendant was liable to pay whatever loss was sustained. Even if it did not

Stover *v.* Flack.

by the terms of the agreement rest with the intestate to determine whether he should sell or not, there was no request made by the defendant to sell, and I do not see that the defendant was injured in the least by not exposing the stock for sale, as there is no evidence that the stock could have been sold so as to benefit him. But, independent of this view of the matter, the charge of the judge to the jury that Stover was not bound to sell the stock in market before commencing a suit, if it was worthless, virtually left it for them to determine whether the defendant had lost any thing in consequence of a failure to sell the stock; and as they have found against him on that point there is no ground for complaint.

III. If any question can arise as to an *implied promise* where the doctrine of principal and agent, and of liability arising from the action of one of two joint parties is applicable, perhaps a promise to pay may be implied from the facts presented in this case. I deem it however unnecessary to discuss that question, as it appears that the promise was express and absolute, in the contract. The intestate bought and paid for the stock at the defendant's request, under an express agreement that the defendant was to pay him for the moneys advanced, the intestate holding the stock in the mean time for the defendant as a pledge for repayment, with a right to expose it for sale in the market, if upon notice the defendant refused to pay for it. Here was an absolute agreement to pay the money, which was ratified by the subsequent acts and conduct of the parties.

IV. I do not regard the agreement as inchoate and imperfect because the parol negotiation was not reduced to writing and signed by the parties, as was originally intended. The stipulation that the contract should be written was not an essential element of vitality. It was not the writing which would render it effective. This was only the means provided for making the agreement more definite and certain. If the parties chose to do so, and actually did execute the contract without a writing, they had a perfect right thus to dispense

with it and waive it, although such a condition might be enforced in equity upon a refusal of either party to execute a written contract. A party may waive a condition precedent to an agreement by entering upon its performance. (*Betts* v. *Perine,* 14 *Wend.* 219. *Grote* v. *Grote,* 10 *John.* 402.) Some of the evidence in this case shows that the defendant claimed the benefit of the parol agreement and to own the stock after the intestate had declined to sign the writing, and I think the judge properly submitted to the jury the question of fact which arose upon the testimony whether the understanding or agreement that the contract should be reduced to writing was waived by the defendant.

V. The point now urged, that conceding a perfect agreement, it was broken by Stover so as to discharge the defendant, does not appear to have been distinctly taken on the trial at the circuit, and cannot be made available now.

VI. I think the contract was not void by the statute of frauds, because (1.) It was partially executed and carried into effect. (2.) There was no sale of the stock by the intestate to the defendant. The purchase of the stock was made in the name of the intestate by both parties and for their joint benefit, by the authority of the defendant. It appears to me, therefore, that no question arises under this statute.

VII. The action was not barred by the statute of limitations. (1.) The intestate paid the money for the stock, on the 23d of March, 1853, within six years before the commencement of the suit. The defendant could not be liable to pay prior to the advance of the money, and the statute would not commence running before the payment. (2.) The amount of personal liability incurred by reason of holding the stock was not paid until the 28th of February, 1859. (3.) It may perhaps be questionable whether the statute began to run before a demand or before a settlement and a balance struck between them as joint owners of the stock.

VIII. The offer made by the defendant's counsel, to prove that Stover did not at any time during his lifetime make an

offer to or a demand of the defendant with reference to the stock was properly rejected by the justice. In the absence of any evidence to show that he did make such offer or demand the law presumes that he did not. The defendant had the benefit of this legal presumption, and his case would not have been strengthened by any negative evidence.

IX. It is insisted that the judgment was erroneous to the extent of five hundred dollars paid upon the debts of the company in February, 1859, with interest from that date. (1.) I am inclined to think that Stover was not a trustee, within the provisions of the general act of 1848. (*Laws of* 1848, *ch.* 40, §§ 16, 24.) (2.) Stover had signed individually and not as trustee, and could not avail himself of a fact not known at the time of his subscription, as a defense. (3.) Stover and the defendant were joint partners in the subscription, and when one partner buys for both it is not a trust. In 22 *N. Y. Rep.* 552, 553, it was held that the relation between the parties in a similar case was not that of a trustee and *cestuis que trust,* but that of principal and agent. (4.) But no such point was made in the court below, and it is too late to present it now.

In conclusion, upon the facts of the case the jury have found in favor of the plaintiff, and there is no such preponderance of evidence upon the main issues as would authorize this court to set aside their verdict upon that account.

A new trial is denied, and the judgment affirmed with costs.

[ALBANY GENERAL TERM, December 1, 1862. *Hogeboom, Peckham* and *Miller,* Justices.)