WIGER and another, Respondents, vs. CARR, Appellant.

*April 11—April 30, 1907.*

*Statute of frauds: Oral authority to purchase property: Brokers: Rescission of contract: Conversion.*

1. An oral agreement authorizing one as agent to purchase property for another from a third person is not within the statute of frauds—sec. 2308, Stats. (1898)—relating to contracts for the "sale of goods," etc.
2. Where plaintiffs had placed money in defendant's hands to pay in part for property to be purchased for them, and defendant, relying thereon, had bound himself to take and pay for the property, plaintiffs could not cancel or rescind their agreement, and defendant had the right to use the money in paying for the property.

APPEAL from a judgment of the circuit court for St. Croix county: E. RAY STEVENS, Judge. *Reversed.*

On January 5, 1905, the plaintiffs placed in the hands of the defendant a certificate of deposit for $8,000 and received from him the following:

"Received from *R. N. Jenson* and *C. N. Wiger* cer. of deposit No. 14405 for $8,000 to be used in payment of $8,000 par value of stock to be purchased from F. H. Welcome. It being agreed that balance of purchase above par to be paid by *C. N. Wiger* and *R. N. Jenson* when stock is delivered. It is contemplated stock will be ready for delivery on or about Jany. 10, 1905. Said certificate of deposit to be held by me until delivery of shares of said stock;

"January 5, 1905.                                    F. J. CARR."

Upon same day defendant agreed with one Regan to be personally responsible for eighty shares out of 140 shares of stock held by Welcome, whereupon Regan purchased the whole of said 140 shares and paid therefor, holding the same untransferred on the books of the corporation. On January 10th, which was the date of the annual stockholders' meeting, the plaintiffs expressed a desire that *Jenson* should become a director and president of the bank and that *Wiger* should become a director. To this the defendant, who was also a stockholder and director, made no objection, but, upon consulting other stockholders, it was found that a majority were unwilling that *Mr. Wiger* should be a director, he being cashier of another and competing bank, and thereupon the plaintiffs declared to the defendant that they did not want the stock, and requested a return of the certificate of deposit, to which request he did not assent.

Thereafter a certificate for the eighty shares of stock was issued to the defendant, who paid therefor, and on January 23d notified the plaintiffs that he desired to deliver the stock to them and receive the balance of its purchase price, approximately $2,500, to which *Jenson* replied January 24th, demanding a return of the certificate, and on February 2d

wrote again, stating that the terms of agreement under which the certificate had been placed in defendant's hands had never been complied with; that the latter had represented that the premium was not to exceed $2,300; that the deal was declared off on January 10th; and that, as he (*Jenson*) was informed, defendant never purchased any bank stock from Welcome. Thereafter, in April or May, the defendant, in satisfaction of his own obligation which he had given for the stock, cashed the certificate of deposit and applied it thereon.

The plaintiffs brought suit asserting conversion of said certificate, both in rejecting their demand for its return and cashing and converting the proceeds thereof. The court made certain findings, the gist of which was to the effect that on January 10th, before defendant had executed any note or writing of any kind with reference to the purchase of said stock, before he had paid any part of the purchase price thereof, and before any of the stock had passed to his possession, the plaintiffs revoked his authority to purchase said stock and demanded a return of the certificate, upon which findings of fact a conclusion of law in favor of plaintiffs' right of recovery was predicated, accompanied by an opinion to the effect that such conclusion resulted from the view that defendant's agreement with Regan was avoided by the statute of frauds. From judgment entered in plaintiffs' favor the defendant appeals.

·*W. F. McNally,* for the appellant.

*F. M. White,* for the respondents.

Dodge, J. The ground of the trial court's decision was that the transaction between defendant and Regan amounted to an agreement for the purchase of stock which, by the statute of frauds, was void, there being neither written memorandum thereof, payment of any part of price, nor delivery of any of the property up to the time when plaintiffs revoked defendant's authority to acquire stock for them. *Spear v.*

*Bach,* 82 Wis. 192, 52 N. W. 97. That transaction, summarized, was as follows: Welcome had 140 shares of stock and evidently did not desire to sell piecemeal. He was, morally at least, obligated to Regan not to sell without the latter's consent or approval. Regan wanted to know or control the holding of part or all of such stock. He was willing that *Carr* should have the eighty shares for these plaintiffs, if, at the same time, the other sixty shares could go into satisfactory hands. In this situation, a few days before January 5th, *Carr* proposed that Regan buy the whole 140 shares, sixty for himself and eighty for *Carr,* to be passed to plaintiffs if they should so authorize, which up to that time they had not done. Regan thereupon negotiated with Welcome and obtained definite terms upon which he could buy and reported to *Carr,* who, after obtaining plaintiffs' consent and their $8,000 certificate of deposit, returned to Regan on January 5th-and definitely authorized him to purchase the eighty shares of stock for him (*Carr*), which Regan thereupon immediately did, receiving a transfer of the whole 140 shares from Welcome and paying for it. We deem it entirely clear that, as between *Carr* and Regan, this was no contract to purchase by the former from the latter, but a contract of agency authorizing the latter to purchase from Welcome for the former. Regan at no time prior to that definite authorization owned the stock. It was still the property of Welcome, and might well have so remained but for the direction to Regan to purchase it for *Carr.* Such a transaction is not within the statute relating to contracts for the "sale of goods," etc. Sec. 2308, Stats. (1898); *Hatch v. McBrien,* 83 Mich. 159, 47 N. W. 214; *Frank v. Murray,* 7 Mont. 4, 14 Pac. 654; *Bird v. Muhlinbrink,* 1 Rich. Law (S. C.) 199, 44 Am. Dec. 247; *Stover v. Flack,* 41 Barb. 162; *Kutz v. Fleisher,* 67 Cal. 93, 7 Pac. 195. The distinction involved in the employment of one as agent to obtain for the principal something which he has not is in close analogy to that in an em-

ployment to manufacture for another that which at the time of contracting has no existence. *Meincke v. Falk,* 55 Wis. 427, 13 N. W. 545; *Gross v. Heckert,* 120 Wis. 314, 97 N. W. 952. Of course, in the purchase by Regan from Welcome on January 5th the statute was fully satisfied by delivery of the property sold and payment of the purchase price.

Owing to the view taken by the trial court as to applicability of the statute of frauds, there is no express finding as to whether defendant, prior to plaintiffs' notification that they did not want the stock, entered into an oral obligation or promise to Regan to take and pay for eighty shares of the stock which the latter bought of Welcome. The finding is merely that no writing was executed till afterward. The evidence of defendant himself is, however, direct and undisputed that on January 5th, before Regan consummated purchase from Welcome and as basis therefor, he promised to be personally responsible for the eighty shares which the court finds were to be acquired by Regan from Welcome for these plaintiffs. Their attempted withdrawal from their contract was on January 10th. We conclude, therefore, that such oral promise is established. The legal result of the situation as arising is too clear for much discussion. Plaintiffs had agreed that defendant might use the money placed in his hands to pay for this stock. Relying thereon, the latter had bound himself to pay a sum of money. It was then too late to cancel or rescind the contract, for defendant could not be placed *in statu quo.* Analogous situations involving the same principle are numerous. *Chappel v. Cady,* 10 Wis. 111; *Saveland v. Green,* 36 Wis. 612; *Green v. Feil,* 41 Wis. 620; *Hess v. Rau,* 95 N. Y. 359; *Terwilliger v. O., C. & S. R. Co.* 149 N. Y. 86, 92, 43 N. E. 432; *Goodwin v. Bowden,* 54 Me. 424. Escape from the foregoing conclusion is sought by respondents upon certain detailed grounds which were not passed upon by the court below because unnecessary in the light of its conclusion. Some of these are as follows:

It is contended that the defendant was limited to a price

of $116 per share of stock while he paid about $118. The evidence is somewhat conflicting and not very definite upon either side. The written contract indicates that the price was to be more than par, but was not definitely fixed. The defendant's evidence is to the effect that he told the plaintiffs that he would be able to get the stock on a basis of a premium of sixteen per cent. plus such undivided earnings as the unbalanced books of the bank would show at the annual meeting, which proved to be such as to warrant the price in fact paid. One of the plaintiffs states $116 per share as the estimated price without such addition, and the other concedes that such addition was spoken of as indefinite but unlikely to amount to more than a trifle. In the light of all the evidence we are persuaded that there was no limit fixed excluding authority to buy the stock at the price of $118 per share. We fail to find support in the evidence for the respondents' contention that defendant's agreement with Regan for the stock was subject to any limitation as to the proportion in which it should be distributed between the plaintiffs.

A contention is made that the agreement between defendant and Regan, upon which rested the former's obligation to pay for the stock, was canceled or released by Regan on January 10th because, when *Jenson* said that the plaintiffs did not desire the stock unless *Wiger* could be a director, Regan responded, "We'll call this deal off, then, and I will hold the stock in the meantime." This was not said to the defendant, and there is no evidence that he was in such proximity to the parties as to have heard it so as in any way to become a party thereto or acquire any right to repudiate or resist his agreement to pay Regan. We cannot think that there is enough in this remark, upon which no action seems to have been based, to establish that *Carr* was, to his knowledge, released from his obligation, even conceding that in such event he would not be entitled to use the plaintiffs' money in his hands for the purpose of paying for the stock.

We conclude that the evidence discloses a situation in

which the defendant might have been compelled to take and pay for the stock, and that he had the right to use the $8,000 placed in his hands by plaintiffs for that purpose, so that he is not liable for conversion thereof in so doing.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for defendant.