DUBIN, Respondent, vs. MOHR, Appellant.

*September 14—October 16, 1945.*

For the appellant there was a brief by *A. H. Eberlein* of Wausau, and *Lehner & Lehner, Adolph P. Lehner,* and *Howard N. Lehner* of Oconto Falls, and oral argument by *Adolph P. Lehner.*

*Herman Leicht* of Medford, for the respondent.

WICKHEM, J.   The facts in this case as derived from the pleadings and affidavits are as follows: Defendant Mohr was president of the Medford Brewing Company, a Wisconsin

corporation, organized with one hundred twenty shares of common stock and fifty shares of preferred stock, each of the par value of $100 per share. Defendant owned a majority of the common stock. Plaintiff was publisher of a trade journal called "The Modern Brewery Age." Defendant desired to sell his stock and advertised in plaintiff's publication the sale of his stock in the brewery. On November 6, 1943, plaintiff and defendant entered into an agreement whereby defendant authorized plaintiff "my exclusive agent to procure for me a purchaser for the sale of the majority capital stock which I now hold in the corporation known as the 'Medford Brewing Company,' . . . and for the sale of all other outstanding capital stock of the said corporation. . . ." The price set for the majority common stock held by plaintiff was $15,000. The agreed price of the remaining common stock was $4,000. The entire preferred stock was priced at $5,000, thus making a total of $24,000. Under the agency agreement these three items could be offered separately or in combination, and defendant agreed to pay as commission at the consummation of any sale, a sum equal to the excess procured over the specified minimum sale price. The employment was to continue and to be irrevocable up to and including December 31, 1943, and thereafter until canceled by ten days' notice in writing by registered mail or personally delivered.

In the latter part of November, 1943, one Sanders came to Medford at the invitation of plaintiff, inspected the property and negotiated with defendant. While negotiations were pending, defendant on December 16, 1943, gave a notice, concededly sufficient, canceling the employment of plaintiff after December 31, 1943. Plaintiff alleges that thereafter, in January, 1944, he secured a purchaser for all the stock on terms satisfactory to defendant, and alleges that defendant then orally agreed that plaintiff should continue his services to make sales. The breach alleged is that on February 12, 1944, defendant sold his majority stock to Sanders and his

associates for the minimum price specified in the employment agreement, thus leaving plaintiff no commission whatever.

It is claimed by defendant that there is no material issue of fact in this case; that the oral extension agreement relied on by plaintiff is void under sec. 121.04, Stats., since corporate stock is a chose in action and every contract for the sale of such stock of the value of $50 or more must be in writing in accordance with the terms of that section. It is further claimed that since the original contract was dead by cancellation there could be no extension of this contract. On these points defendant's position cannot be sustained. This is not a contract for the sale of corporate stock, but an agency contract constituting plaintiff defendant's exclusive agent for the sale of the stock and undertaking to compensate plaintiff by commission in the event of a sale. Not being a contract to sell real estate, it is not covered by sec. 240.10, requiring brokerage contracts for the sale of real estate to be in writing. Not being a contract for the sale of goods or choses in action sec. 121.04 is inapplicable. See *Wiger v. Carr,* 131 Wis. 584, 111 N. W. 657. It follows that an oral contract was valid.

Defendant's contention that the original agency contract could not be extended after its expiration is unsound. If no writing was required a new oral contract incorporating the terms of the original one could be entered into between the parties, whereby plaintiff could continue to act as agent and defendant be obligated to pay specified commissions.

Defendant further contends that since the agreement did not give plaintiff an exclusive power to sell but simply an exclusive agency, defendant did not disable himself from selling his stock by his own efforts. This point appears to us to be immaterial because plaintiff alleges that prior to defendant's sale to Sanders he produced a purchaser ready and willing to buy in accordance with the terms stipulated by defendant as conditions of the sale, and that defendant consented to an extension of the agency agreement for the purposes of negotiat-

ing this sale. This, of course, is denied by defendant, and an issue of fact exists that is not destroyed by any of the affidavits.

We conclude therefore that the trial court rightly decided that there were genuine issues for trial and that a summary judgment should not be granted.

Plaintiff claims that the trial court erroneously denied plaintiff's motion for summary judgment. There is no cross-appeal or motion to review and, in any event, the correct disposition of defendant's motion necessarily disposed of plaintiff's motion correctly.

*By the Court.*—Order affirmed.