No. 20,048.

ROBERT J. CARY *v.* THE BORDEN COMPANY, ET AL.
(386 P. [2d] 585)

Decided October 21, 1963.     Rehearing denied November 26, 1963.

Mr. WILLIAM A. BLACK, for plaintiff in error.

Messrs. HOLME, ROBERTS, MORE & OWEN, Mr. DONALD C. McKINLAY, Mr. JOSEPH W. MORRISEY, for defendant in error The Borden Company.

Messrs. HUGHES & DORSEY, Mr. RAYMOND B. DANKS, Mr. THOMAS KEELY, for defendants in error Carlson-Frink Company, a corp., The First National Bank

of Denver, a corporation, individually, and as Executor of the Estate of Frank W. Adams; Eugene H. Adams; Clarence H. Adams; Fred M. Adams; Robert H. Reeves; Richard P. Brown; Fred F. Struby; Loran D. Clark; and Earl Lambuth.

*In Department.*

Opinion by Mr. Chief Justice Frantz.

Cary filed a complaint in three counts. In substance he alleged that The Borden Company was searching for a dairy which it could purchase, and pervading the three counts is the central theme that he rendered services in this respect, thereby aiding The Borden Company in the acquisition of Carlson-Frink Company located in Denver, Colorado.

His first claim is based upon an oral contract that for such services he was to be paid a 5% commission which was to be added to the gross selling price. By his second claim he would recover the reasonable value of his "services in his capacity as a finder or business broker" in connection with the transaction. These claims are directed against The Borden Company and Carlson-Frink Company.

In each of these claims Cary maintains that he is entitled to recover $250,000.00. Liability is asserted against Carlson-Frink Company on the theory that Cary, pursuant to the directions of The Borden Company, made arrangements with Carlson-Frink Company by which a commission of 5% would be added by the latter to the gross selling price.

The third claim is in tort against the individual non-corporate defendants and The First National Bank of Denver. In this third claim Cary charges said defendants with unjustifiably conspiring "to induce and procure" and with having induced and procured "Borden and Carlson-Frink to breach and otherwise refuse to perform

their contracts with" Cary, to his damage in the sum of $250,000.00.

As part of his allegations Cary makes reference to a number of exhibits in which it appears that he sought and obtained information from Carlson-Frink Company and performed other tasks at the request of The Borden Company.

The 20th and 21st paragraphs of the first claim are as follows:

"20. On or about July 31, 1959, the Defendants, ignoring all agreements and contracts with Plaintiff, and without notice to Plaintiff, concluded a purchase and sale, whereby the stockholders of the newly merged Carlson-Frink Company exchanged their stock for Borden stock, so that Carlson-Frink was acquired by Borden. Thereby, the transaction undertaken by Plaintiff for Borden was consummated, and the compensation agreed upon became due and payable to Plaintiff for his services *in finding for Borden a dairy in Denver, Colorado.*

"21. *By finding and introducing the parties and inducing them to commence negotiations for the purchase of Carlson-Frink by Borden,* Plaintiff fully performed and completed his duties and employment *as a finder or business broker,* and although Plaintiff at all times stood ready, willing and able to assist in the negotiations and consummation of the sale in any manner requested of him, Defendants, and all of them, by their conduct and at their own election deliberately and intentionally excluded Plaintiff from further participation in the transaction and deprived him of his lawful compensation." (Emphasis supplied.)

The several defendants filed motions to dismiss, directed to the claims of Cary as these claims affected them. After argument the trial court dismissed the several claims on the theory that the transaction involved real estate in significant part, that Cary had not a real estate broker's license as required by C.R.S. '53, 117-1-1, et seq., and that the want of a license tainted the whole

transaction and rendered it void. The propriety of the trial court's order, dismissing the three claims, is questioned by writ of error.

C.R.S. '53, 117-1-1, requires one engaged in the business of real estate broker to obtain a license. A real estate broker is defined by C.R.S. '53, 117-1-2, as one "who *for compensation or valuable consideration* sells or exchanges or offers for sale or exchange, buys or offers to buy, or who negotiates the purchase or sale or exchange, of *real estate* * * * for another or others." (Emphasis supplied.) To act without such license is made a criminal offense by C.R.S. '53, 117-1-19. In construing the act, this Court has held that a sale of realty made by one who acts in the capacity of a broker without a license disentitles him to compensation for his services. *Benham v. Heyde,* 122 Colo. 233, 221 P. (2d) 1078.

Must one who renders services in connection with the sale of a going business have a real estate broker's license where realty comprises a part of the assets of such going business, before he may recover a commission? This is the question which confronts us in this case, and so far as we can ascertain, the question is novel to this Court.

Courts of other states have considered the problem under varying circumstances, and it appears from their decisions that four different solutions have been reached.

A rule, referred to as the New York rule, had its inception in the leading case of *Weingast v. Rialto Pastry Shop,* 243 N.Y. 113, 152 N.E. 693. In holding the recovery of a commission proper, the Court reasoned that "as failure to procure a license is made a crime, the statute must not be extended by implication."

█ He who, pursuant to an agreement, negotiates or aids in the transfer of a going business may recover a commission despite the fact that real estate forms an incident of the transaction and he has not a real estate broker's license. *Weingast v. Rialto Pastry Shop,* supra; *Dodge v. Richmond,* 173 N.Y.S. (2d) 786; *J. L. Kislak, Inc., v. Carol Management Corp.,* 184 N.Y.S. (2d) 315;

*Reichardt v. Hill,* 236 Fed. 817; *Dubin v. Mohr,* 247 Wis. 520, 19 N.W. (2d) 880; see *Frier v. Terry,* 230 Ark. 302, 323 S.W. (2d) 415. "And this is true even though such item may be a significant though not a dominant feature of the transaction." *Dodge v. Richmond,* supra.

Opposed to the foregoing rule is one sometimes referred to as the New Jersey rule. It is enunciated in *Kenney v. Paterson Milk & Cream Co., Inc.,* 110 N.J.L. 141, 164 Atl. 274, 88 A.L.R. 1416. In this jurisdiction the contract is treated as an entirety and it applies the rule that "if a contract be in its nature entire, and in one part it satisfies the statute, and in others does not, then it is altogether void." Supporting this view are *Abrams v. Guston,* 110 Cal. App. (2d) 556, 243 P. (2d) 109; *De Metre v. Savas,* 93 Oh. App. 367, 113 N.E. (2d) 902; *Grammer v. Skagit Valley Lumber Co.,* 162 Wash. 677, 299 Pac. 376.

Where the real estate and the personal property were each given a separate sales price, the Court permitted a recovery of the commission for the personal property in the case of *Marks v. Walter G. McCarty Corp.,* 33 Cal. (2d) 814, 205 P. (2d) 1025, in which a hotel, its furniture and equipment were the subject of a sale. This represents an exception to the general rule prevailing in California. *Abrams v. Guston,* supra. *Carter v. Thompkins,* 133 Colo. 279, 294 P. (2d) 265, would appear to sanction the rule of the Marks case on the theory that the legal activity is severable from the illegal.

An extension of this last theory is represented by the decision of *Moreland v. Kilgore,* 83 Ga. App. 606, 64 S.E. (2d) 295. The sale involved a store which included realty and personalty consisting of stock, fixtures and many other items. In a suit for commissions, the seller resisted on the ground that the plaintiff had not a real estate broker's license as required by a statute of the State of Georgia.

In respect to the position of the seller, the Court stated: "Even if it be conceded that the plaintiffs were

not entitled to recovery of the commissions on the sale of the real estate, we find no law that would prevent the plaintiffs recovering a commission for the sale of the personalty involved."

Can it be that the complaint alleged conduct on the part of Cary that brought him within the true intendment of C.R.S. '53, 117-1-1, et seq.? As we view it, the fact that realty, if separately considered, would fall within the descriptive words of the statute, cannot justify the isolation of it for the purpose of treating it as the subject of a separate sale; the realty must be regarded as constituting an essential part of an exceptional and unitary subject-matter of sale — the sale of a going concern in which the realty involved was "not a dominant feature." We will not extend the statute by implication so as to make the conduct of Cary criminal. *Weingast v. Rialto Pastry Shop,* supra.

In adopting the New York rule, we hold that the complaint did state claims which were sufficient as against a motion to dismiss. The judgment is reversed.

MR. JUSTICE HALL and MR. JUSTICE DAY concur.