Rosemary M. **CUMPSTEN,** Edward C. **Moeller,** Anne **Moeller,** and Lenore **Wagner,** Plaintiffs-Appellees,

v.

The **COLORADO REAL ESTATE COMMISSION,** Defendant-Appellant.

No. 84CA1008.

Colorado Court of Appeals,
Div. II.

April 17, 1986.

Rehearings Denied May 15, 1986.

Certiorari Granted (Moeller)
Oct. 14, 1986.

Hammond, Clark & White, Roger E. Clark, Loveland, for plaintiff-appellee Rosemary M. Cumpsten.

Allen, Rogers, Metcalf & Vahrenwald, Donald E. Johnson, Jr., Fort Collins, for plaintiffs-appellees Edward C. Moeller and Anne Moeller.

Herbert A. Shatz, Denver, for plaintiff-appellee Lenore Wagner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Linda K. Baker, First Asst. Atty. Gen., Linda K. Sublette, Asst. Atty. Gen., Denver, for defendant-appellant.

VAN CISE, Judge.

This is a consolidated action by plaintiffs, Rosemary M. Cumpsten, Edward C. and Anne Moeller, and Lenore Wagner (applicants), seeking an order directing defendant, Colorado Real Estate Commission (the commission), as administrator of the Real Estate Recovery Fund (the fund), to pay them the amount of their losses incurred as a result of fraudulent acts, willful misrepresentations, and conversions committed by Charles L. Simmons, a licensed real estate broker, individually and as president and broker for Red Rooster Realty, Inc. (Red Rooster), itself a licensed real estate broker, and as president of Hi-Valley Builders, Inc. (Hi-Valley). The applicants' complaints pertained to a number of real estate investment loans made during the period 1978 through 1981 by the applicants to Simmons individually or to one of his companies, based on his representations of extraordinary profits to be realized from investing with him. The trial court ordered the commission to pay to the applicants, out of the fund, a total of $50,000, allocated among them in proportion to their losses. The commission appeals, and we reverse.

The facts which gave rise to the applicants' complaints are essentially as follows. Simmons told Mrs. Cumpsten that he was ready to begin construction of new homes, but needed "a little more funding." She loaned him $5,000 on his promise to return her money in six months plus $1,200 in interest. She was given a promissory note and an "investment loan agreement" which stated that Hi-Valley was obtaining the loan from her "for operating expenses and initial costs for the construction of residential homes."

At the end of the 6-month period, Simmons paid Cumpsten only $600 interest on the note. She agreed to an extension of the loan. Subsequently, Simmons defaulted. She sued, and obtained a judgment for the amount of her loan, plus interest and

costs. She then filed a verified application for payment from the fund.

The Moellers made six short-term high interest loans to Simmons or his companies in a total of $69,500, on his representations that he would use the money to buy land on which he or his company would construct houses or, in two instances, would use the money as operating capital. From the sale proceeds would come the funds to repay the loans. The Moellers received a promissory note and an "investment agreement" or "agreement for investment loan" for each transaction.

Simmons defaulted on the notes, and filed chapter 7 bankruptcy. The Moellers sued, obtained a judgment, and then applied for payment from the fund.

Mrs. Wagner loaned Simmons $5,000 which he promised to use, with other funds, to construct and sell a house and repay her out of the proceeds. Instead, the money went into his business, was not used for the promised purpose, and was not repaid. She filed a claim in the bankruptcy court. That court determined Simmons' debt to her was not dischargeable, and entered judgment in her favor for the $5,000 plus interest and costs.

The commission, as administrator of the fund, had been made a party defendant in the Cumpsten and Moeller cases. The commission itself brought Wagner in as an additional party in the Cumpsten case. Then both cases were consolidated so that all three applications could be adjudicated in one proceeding.

At the hearing on the claims against the fund, the applicants and the commission stipulated that the statutory requirements (see § 12-61-303, C.R.S. (1985 Repl.Vol. 5)) for the issuance of an order for payment out of the fund had been met, with two exceptions. The first was the commission's contention that in none of the transactions was Simmons or Red Rooster performing acts for which a real estate license was required. See §§ 12-61-101(2), 12-61-302(1), and 12-61-303(2)(e), C.R.S. (1985 Repl.Vol. 5). Its second contention was that Wagner had failed to notify the commission when she commenced and prosecuted her action in the bankruptcy court, contrary to the provisions of § 12-61-303(1), C.R.S. (1985 Repl.Vol. 5).

The trial court concluded that the applicants had complied with all of the statutory prerequisites. It further found that Simmons and Red Rooster had engaged in activities for which a real estate license was required. Pursuant to the statutory limitation of $50,000 maximum payout for any one licensee, § 12-61-302(2), C.R.S., the court ordered a pro rata payout to the applicants of $3,105.60 to Wagner, $3,726.70 to Cumpsten, and $43,167.70 to the Moellers.

I.

On appeal, the commission first contends that the trial court erred in concluding that Simmons and Red Rooster performed activities for which a real estate license was required under § 12-61-101, et seq., C.R.S. (1985 Repl.Vol. 5). We agree.

Sections 12-61-302(1) and 12-61-303(2)(e), C.R.S. (1985 Repl.Vol. 5), authorize payments to applicants when "the negligence, fraud, willful misrepresentation, deceit, or conversion of trust funds arose directly out of a transaction which occurred when such broker or salesman was licensed and in which such broker or salesman performed acts for which a license is required under part 1 of this article...."

A license is required for any person or corporation engaged in the "business or capacity of real estate broker or real estate salesman." Section 12-61-102, C.R.S. (1985 Repl.Vol. 5). "Real estate broker" or "broker" is defined in § 12-61-101(2), C.R.S. (1985 Repl.Vol. 5). That definition generally limits the term to the buying, selling, or renting of real property or the listing for, or negotiating of, such sale, purchase, or renting of real property or improvements thereon.

A "real estate salesman" or "salesman" is defined in § 12-61-101(3), C.R.S. (1985 Repl.Vol. 5), as:

"[A]ny person employed or engaged by or on behalf of a licensed real estate broker to do or deal in any activity of a real estate broker, as defined in subsection (1) or (2) of this section, for compensation or otherwise."

Here, the applicants lost money because of a financial relationship with a person who happened to be a licensed real estate broker and who represented himself as such in order to bolster his credibility to the applicants in these transactions. However, all the agreements between Simmons and the applicants were, in essence, investment loans. The applicants believed that by turning money over to Simmons, they would eventually earn a high return on their investments. Although the promised use of the money pertained to improvements to real estate, in none of the transactions did Simmons perform acts for which a real estate license was required. *See Lemler v. Real Estate Commission*, 38 Colo. App. 489, 558 P.2d 591 (1976), and *Bamford v. Cope*, 31 Colo.App. 161, 499 P.2d 639 (1972). Therefore, the applicants are not eligible to receive payment from the fund.

## II.

In view of our ruling in section I above, we do not address the commission's contention that Wagner is ineligible for failure to notify the commission concerning its action in the bankruptcy court.

The order directing payment out of the fund is reversed, and the cause is remanded with directions to dismiss that portion of the complaints that relate to the commission.

SMITH and STERNBERG, JJ., concur.