Edward C. MOELLER and Anne
Moeller, Petitioners,

v.

COLORADO REAL ESTATE
COMMISSION, Respondent.

No. 86SC199.

Supreme Court of Colorado,
En Banc.

July 5, 1988.

As Modified on Denial of
Rehearing Aug. 8, 1988.

Allen, Rogers, Metcalf & Vahrenwald, Donald E. Johnson, Jr., J. Brian McMahill, Fort Collins, for petitioners.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Linda K. Baker, First Asst. Atty. Gen., Denver, for respondent.

ERICKSON, Justice.

We granted certiorari to review *Cumpsten v. Colorado Real Estate Commission,* 727 P.2d 380 (Colo.App.1986). The issue before us for review is whether a private party who is defrauded by a licensed real estate broker in a scheme to buy and develop subdivision lots is entitled to recovery from the Colorado Real Estate Recovery Fund (Fund). *See* §§ 12–61–301 to –305, 5 C.R.S. (1973 & 1982 Supp.). Edward C. and Anne Moeller (Moellers), husband and wife, obtained a default judgment against Red Rooster Realty (Red Rooster) and Hi–Valley Builders (Hi–Valley) based on fraud, willful misrepresentation, and deceit by Charles L. Simmons, a licensed real estate broker and the sole shareholder of both corporations. Simmons had induced the Moellers to invest funds in a fraudulent scheme to buy and develop real estate. Simmons subsequently declared bankruptcy and the Moellers were unable to collect their judgment. The Moellers filed an application in the District Court of Larimer County for compensation from the Fund. The case was consolidated with the applications of Rosemary M. Cumpsten and Lenore Wagner. The trial court ordered the Fund to pay a pro rata share of the $50,000 limit under section 12–61–302 to each claimant and the Real Estate Commission (Commission) appealed. The court of appeals reversed all three cases, concluding that Simmons had not engaged in conduct requiring a real estate license and that the three parties' claims were therefore not subject to recovery from the Fund. *Cumpsten,* 727 P.2d 380; *see* §§ 12–61–101(2), –102, –302. Of the three claimants' applications for compensation from the

Fund, only the application of the Moellers is before us for review. We reverse and remand to the court of appeals with directions to affirm and reinstate the judgment entered by the trial court.

I.

The Moellers are retirees living in Loveland, Colorado. Both of the Moellers have only an eighth grade education. In 1978, they were approached by Charles Simmons (Simmons) and his wife, Tillie Simmons. Simmons is a licensed real estate broker and the sole shareholder of Red Rooster and Hi–Valley. Simmons told the Moellers that he was a licensed real estate broker and that he could earn large sums of money for them by buying and developing lots in the Larkin Re–Subdivision of Seven Lakes in Loveland, Colorado. Simmons proposed to build homes on the lots, and to sell the developed lots for a profit. He informed the Moellers that, if they provided the money to buy the lots and build the homes, he would give them $2,500 or 50% of the profits from the sale of each lot, whichever was greater. He also promised the Moellers that they would receive deeds to the property. The Moellers understood Simmons' promise to mean that they would be the owners of the property.

The Moellers subsequently executed three "Investment Agreements" with Simmons and gave him $19,500 to buy three lots in the Larkin subdivision.[1] Contrary to Simmons' promise to the Moellers to deliver deeds to the lots, the agreements called for Simmons to execute promissory notes in favor of the Moellers and to secure the notes by second deeds of trust on the purchased property. To finance the construction of homes on the land, the agreement contemplated loans from a bank secured by a first deed of trust. The Moellers testified that they did not know the difference between a deed and a deed of trust.

---

1. In the record, there are only two "Investment Agreements." The third agreement is referred to in the index of exhibits but was not submitted with the exhibits themselves. The undisputed testimony of the Moellers, however, establishes that they purchased three lots and signed three "Investment Agreements."

Construction on the three lots was to commence in the spring of 1979. In January 1979, Simmons approached the Moellers and requested $25,000 to finance the construction. The Moellers agreed, and Simmons executed a promissory note and an "Agreement for Investment Loan." The agreement stated that the purpose of the loan was to provide operating capital for Red Rooster.

In February 1979, Simmons approached the Moellers for an additional $15,000 to purchase property in Quail Run, which consisted of two subdivisions. The Moellers agreed, and Simmons prepared an "Agreement for Investment Loan" to "acquire two subdivisions." Under the agreement, a promissory note for $15,000 was to be executed in favor of the Moellers.

In July 1979, Simmons again approached the Moellers and requested $15,000 for home construction on the lots in the Larkin subdivision. Mr. Moeller told Simmons that he would not give him more money until he received a deed to one of the lots. Simmons promised Mr. Moeller that he would give him a deed, and the Moellers gave Simmons the $15,000 he requested. Simmons prepared an "Investment Agreement" stating that the $15,000 was an "investment loan" to finance the building of three homes in the Larkin subdivision. The agreement called for a note to be executed in favor of the Moellers. When Mr. Moeller later asked for the deed to one of the lots, Simmons said: "I can't give it to you now. I've got it in my name."

Finally, in January, 1981, Simmons visited the Moellers and told them that all of the previous notes he had given them were outdated and "no good." At that time, payment on the notes was in fact overdue. Simmons demanded that the Moellers give him the old notes in exchange for a $120,000 renewal note. The Moellers complied. They did not hire an attorney during their dealings with Simmons since Simmons informed them that he knew "all the legal aspects" of the transactions and that an attorney was unnecessary.

Simmons defaulted on the renewal note. The Moellers were never given a deed or deed of trust by Simmons. The money paid to Simmons by the Moellers was converted or otherwise dissipated by him contrary to the specific purpose of the real estate development agreement.

The Moellers sued Charles and Tillie Simmons, Red Rooster, and Hi-Valley and on June 16, 1982, obtained a default judgment for $124,091.41 against Red Rooster and Hi-Valley based upon fraud, willful misrepresentation, and deceit by Simmons. The Simmonses filed a petition for bankruptcy in the United States Bankruptcy Court. By order dated June 29, 1982, the bankruptcy court held that $15,000 of the $124,091 default judgment was not dischargeable in bankruptcy under the United States Bankruptcy Code since that portion of the jugment was based on Simmons' fraudulent conduct. 11 U.S.C. § 548 (1982). The Moellers were unable to collect the judgment.

On October 22, 1982, the Moellers filed an application in the District Court of Larimer County for compensation from the Fund. *See* §§ 12–61–301 to –305, 5 C.R.S. (1978 & 1982 Supp.). The trial court consolidated the Moellers' claim with the claims of Rosemary M. Cumpsten and Lenore Wagner, two other parties who were defrauded by Simmons. Prior to trial, the Commission stipulated that the Moellers had satisfied all but one of the statutory prerequisites under section 12–61–302(1) for payment from the Fund. The Commission argued that the Moellers were not entitled to payment from the Fund under section 12–61–302(1) because the transactions underlying their claims for relief were not acts requiring a real estate license under section 12–61–102, 5 C.R.S. (1982 Supp.).

In an order dated May 21, 1984, the court, without entering detailed findings of fact, found that Simmons and Red Rooster had engaged in activities requiring a real estate license and undertook the activities in expectation of receiving a commission. The order included a finding that Simmons' and Red Rooster's receipt of funds to consummate the real estate transactions was "done in the ordinary course of [their] real

estate business, and that this activity required a broker's license." The trial court found that the conduct of Simmons and Red Rooster was not exempt from the license requirement under section 12–61–101(4)(j). The order distributed $50,000, the Fund's limit for claims against any one broker, pro rata to the three claimants. *See* § 12–61–302(2).

On appeal, the court of appeals reviewed the awards to the three claimants and reversed, finding that Simmons and Red Rooster did not engage in transactions requiring a real estate license. According to the court of appeals, "all the agreements between Simmons and the applicants were, in essence, investment loans" that would "earn a high return on [the applicants'] investments." *Cumpsten v. Colorado Real Estate Comm'n,* 727 P.2d 380, 383 (Colo.App.1986). The court concluded that such activities did not require a license since section 12–61–101(2) limits the license requirement "to the buying, selling, or renting of real property or the listing for, or negotiating of, such sale, purchase, or renting of real property or improvements thereon." *Id.* at 382. Accordingly, the court of appeals reversed the district court and remanded with directions to dismiss that portion of the complaint dealing with commissions.

## II.

The Moellers' ability to recover from the Colorado Real Estate Recovery Fund depends upon section 12–61–302(1), 5 C.R.S. (1982 Supp.), which provides as follows:

> When any person obtains a final judgment in any court of competent jurisdiction against any real estate broker or real estate salesman licensed under part 1 of this article after a hearing and finding by the court on the grounds of negligence, fraud, willful misrepresentation, deceit, or conversion of trust funds arising directly out of any transaction which occurred when such broker or salesman was licensed *and in which such broker or salesman performed acts for which a license is required under part 1 of this article* ... such person may ... file a

verified application in the court in which the judgment was entered for an order directing payment out of the real estate recovery fund of the amount of actual and direct loss in such transaction ... but nothing in this part 3 shall obligate the real estate recovery fund for more than fifty thousand dollars with respect to any one licensee....

(Emphasis added.) The sole issue to be resolved to determine if the Moellers can recover from the Fund is whether under section 12–61–302(1) Simmons, in his dealings with the Moellers, "performed acts for which a license is required." Section 12–61–102, 5 C.R.S. (1982 Supp.), sets forth that a Colorado real estate license is required to "engage in the business or capacity of real estate broker or real estate salesman." Section 12–61–101(2), 5 C.R.S. (1978), defines a "real estate broker" as follows:

> [A]ny person ... or corporation who, *in consideration of compensation by fee, commission, salary or anything of value* ... engages in or offers or attempts to engage in either directly or indirectly, *by a continuing course of conduct* ..., any of the following acts:
>
> (a) *Selling,* exchanging, *buying,* renting or leasing *real estate,* or interest therein, or improvements affixed thereon;
>
> (b) *Offering to sell,* exchange, *buy,* rent, or lease *real estate* or interest therein, or improvements affixed thereon; [or]
>
> ....
>
> (d) *Negotiating the purchase, sale,* or exchange of *real estate,* or interest therein, or improvements affixed thereon....

(Emphasis added.) Under section 12–61–101(3), 5 C.R.S. (1978), a "real estate salesman" is "any person employed or engaged by or on behalf of a licensed real estate broker to do or deal in any activity of a real estate broker ... for compensation or otherwise." Accordingly, to recover from the Fund the Moellers must establish that Simmons acted as a real estate broker or a real estate salesman under section 12–61–101.

### A.

█ The Commission claims that, in determining whether the Moellers can recover from the Fund, section 12–61–101 must be strictly construed since it is penal in nature. *See Lemler v. Colorado Real Estate Comm'n,* 38 Colo.App. 489, 558 P.2d 591 (1976); *see also People v. District Court,* 713 P.2d 918 (Colo.1986) (penal statutes must be strictly construed in favor of defendant). Section 12–61–119, 5 C.R.S. (1978), makes it a criminal offense to act as a real estate broker or real estate salesman without a real estate license. *Cary v. Borden Co.,* 153 Colo. 344, 386 P.2d 585 (1963). Since the construction of section 12–61–101(2) affects the breadth of the criminal sanction in section 12–61–119, the Commission argues that section 12–61–101(2) must be strictly construed in all cases. In our view, the statute should not be strictly construed under the facts of this case.[2]

The broad remedial purpose of the Colorado Real Estate Recovery Fund is to provide a monetary fund to protect innocent purchasers of real estate from insolvent real estate brokers and salesmen who are guilty of fraudulent conduct. *Chetelat v. District Court,* 196 Colo. 473, 586 P.2d 1335 (1978); *Johns v. Colorado Real Estate Comm'n,* 697 P.2d 410 (Colo.App. 1984); *Richards v. Income Realty & Mortgage, Inc.,* 654 P.2d 864 (Colo.App.1982).

Statutes having remedial purposes are to be liberally construed to advance the remedial objectives of the General Assembly. *Industrial Comm'n v. Corwin Hosp.,* 126 Colo. 358, 250 P.2d 135 (1952); *Credit Men's Adjustment Co. v. Vickery,* 62 Colo. 214, 161 P. 297 (1916); *Colorado & So. Ry. Co. v. State R.R. Comm'n,* 54 Colo. 64, 129 P. 506 (1913); *see generally* 3 N. Singer, *Sutherland Statutory Construction* § 60.01 (4th ed. 1986 & 1988 Supp.) (discussing treatment of remedial statutes). When a statute is both remedial and penal in nature, the remedial and penal elements are separated and the appropriate standard is applied to each. *Credit Men's Adjustment Co.,* 62 Colo. at 217, 161 P. at 298; *see Seibel v. Colorado Real Estate Comm'n,* 34 Colo.App. 415, 530 P.2d 1290 (1974) (strict construction not required in disciplinary proceeding against licensed real estate broker); *see generally* N. Singer, *supra,* at § 60.04 (discussing treatment of statutes that are both remedial and penal in nature). Accordingly, with respect to the Moellers' application to the Fund, section 12–61–101 is to be liberally construed. *Accord Edmonds v. Augustyn,* 193 Cal.App.3d 1056, 238 Cal.Rptr. 704 (1987); *Milton v. Haddox,* 349 N.W.2d 361 (Minn.App.1984). *But see Lemler v. Colorado Real Estate Comm'n,* 38 Colo.App. 489, 558 P.2d 591 (1976).[3]

**2.** In *Cary v. Borden Company,* 153 Colo. 344, 386 P.2d 585 (1963), we determined that under the facts of that case section 117–1–1, 5 C.R.S. (1953), the predecessor of section 12–61–101(2), had to be strictly construed. In that case, Robert J. Cary, a salesman, brought suit against the Borden Company and Carlson–Frink Company to recover, *inter alia,* an unpaid sales commission concerning his participation in the sale of a dairy business. The defendants had consummated the purchase and sale of the dairy, which was formerly owned by Carlson–Frink, in contravention of their agreements with Cary. Because the dairy business involved real estate assets, the defendants claimed that, under section 117–1–19 a real estate license was required. Since Cary had no real estate license, the defendants argued that the agreements were illegal under section 117–1–19, which imposed criminal sanctions on persons acting as a real estate broker without a license, and that Cary could not recover the agreed commission. We noted the penal nature of sections 117–1–19 and 117–1–1 and held that section 117–1–1 had to be

strictly construed. In this case by contrast, a person is not being punished for unlawfully conducting business as a real estate broker without a license. The objective of this case is to compensate the victims of a fraud perpetrated by a licensed real estate broker under section 12–61–302(1).

**3.** In *Lemler v. Colorado Real Estate Commission,* Gerald and Elizabeth Lemler brought suit to obtain payment from the Fund. The Lemlers had contracted with Damar Company, Inc., (Damar) for the design and construction of a residence to be constructed by Damar on land owned by the Lemlers. The trial court denied recovery and the Lemlers appealed. The court of appeals concluded that section 12–61–101 had to be strictly interpreted in determining the application of section 12–61–302, since section 12–61–101 is penal in nature under section 12–61–119. The court affirmed the trial court concluding that under section 12–61–101(2)(a) "real estate ... or improvements affixed thereon" refers to improvements situated on real estate at

### B.

Having concluded that the provisions governing the application of the Fund are to be liberally construed under the facts of this case, we must determine whether the Moellers can recover from the Fund. The Commission claims that under section 12–61–302(1) the Moellers are not entitled to recover from the Fund because Simmons did not require a real estate license to conduct the transactions with the Moellers. The Commission argues that Simmons formed a joint venture or partnership with the Moellers in which he contributed his services and the Moellers contributed money. According to the Commission, the partnership arrangement does not require a real estate license since under section 12–61–101(2) Simmons was to share the profits from the sale of the developed property with the Moellers and was not compensated for his work as a broker but for his services as a real estate developer. *See Lemler v. Colorado Real Estate Comm'n,* 38 Colo. App. 489, 558 P.2d 591 (1976); *Bamford v. Cope,* 31 Colo.App. 161, 499 P.2d 639 (1972). The Commission also asserts that the trial court failed to make specific findings of fact to support its holding and that the case must therefore be remanded under C.R.C.P. 52 for additional findings.

While the application of the licensing statute to a particular transaction is a question of law, the determination of the nature of the transaction is a question of fact. *American West Motel Brokers, Inc. v. Wu,* 697 P.2d 34 (Colo.1985). In reviewing the trial court's findings of fact, an appellate court cannot determine factual issues adversely to the trial court and must uphold the trial court's findings unless they are clearly erroneous and not supported by the record. *Gebhardt v. Gebhardt,* 198

Colo. 28, 595 P.2d 1048 (1979); *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979); C.R.C.P. 52. Although the record presents conflicting evidence, it is within the special province of the trial court, as the finder of fact, to determine credibility of witnesses, sufficiency of the evidence, probative effect and weight of evidence, and inferences and conclusions from the evidence. *In re M.S.H.,* 656 P.2d 1294 (Colo.1983); *Deas v. Cronin,* 190 Colo. 177, 544 P.2d 991 (1976). The trial court's findings are insulated from appellate review because the trial judge has a unique opportunity to observe witnesses and to assess their credibility and the weight to be afforded their testimony. *Page,* 197 Colo. at 313, 592 P.2d at 796.

▪ In our view, the trial court's finding that Simmons and the Moellers engaged in transactions requiring a real estate broker's license under section 12–61–101(2) is supported by the record and must be upheld on review. According to the undisputed testimony of the Moellers, Simmons acted as their agent and, under section 12–61–101(2), engaged in a continuing course of conduct on their behalf to buy and sell realty. The Moellers testified that they were to finance the purchase and development of the lots and that they, not Simmons or Red Rooster, were to receive title to the lots. The Moellers' unsophisticated nature prevented them from discovering the discrepancies between Simmons' misrepresentations and the text of the documents they signed. Simmons' participation in developing the lots does not alter the legal characterization of his conduct. His agreement to construct residences was an integral and inseparable part of a continuing course of conduct to buy and sell real estate for the Moellers.[4]

---

the time of the sale or attempted sale and not to improvements yet to be constructed. The court held that a real estate interest is not conveyed merely by signing a construction contract. *Lemler* is factually distinguishable from this case because Simmons' agreement to construct residences was part of a larger agreement to buy and sell real estate. In *Lemler,* the court stated that section 12–61–101 had to be strictly construed to determine the application of the Recovery Fund. 38 Colo.App. at 491, 558 P.2d

at 592. In our view, *Lemler* misstated the applicable standard governing the review of the application of section 12–61–302.

**4.** The Commission cites *Bamford v. Cope,* 31 Colo.App. 161, 499 P.2d 639 (1972), to support its contention that Simmons' conduct did not require a real estate license. In our view, *Bamford* is factually distinguishable from this case. In *Bamford,* Wayne Bamford brought suit against Wiley Cope and Jack Richardson to re-

Finally, the Commission contends that the case must be remanded under C.R.C.P. 52(a) for specific findings of fact since the trial court made no specific factual findings to support its conclusions of law. C.R.C.P. 52(a) provides that, in actions tried without a jury, "the court shall find the facts specially and state separately its conclusions of law thereon...." The brevity of a trial court's findings and conclusions alone does not determine their validity. *Manor Vail Condominium Ass'n v. Town of Vail*, 199 Colo. 62, 604 P.2d 1168 (1980); *Thiele v. City & County of Denver*, 135 Colo. 442, 312 P.2d 786 (1957). "There is sufficient compliance with the rule if the ultimate facts have been determined and conclusions of law are entered thereon." *Manor Vail Condominium Ass'n*, 199 Colo. at 68, 604 P.2d at 1172. Here, though the factual findings of the trial court are brief and undetailed, we are able to determine the basis of the trial court's judgment from its findings and a review of the record.[5] *See Twin Lakes Reservoir &*

*Canal Co. v. Bond,* 156 Colo. 433, 399 P.2d 793 (1965) (purpose of C.R.C.P. 52(a) is to enable appellate court to determine basis of trial court's decision).[6]

Accordingly, we reverse and remand to the court of appeals with directions to affirm and reinstate the judgment entered by the trial court.

VOLLACK, J., dissents.

VOLLACK, Justice, dissenting:

I dissent to the majority opinion because I agree with the Colorado Real Estate Commission's contention that the trial court failed to make adequate findings of fact to support its conclusion of law that the Moellers delivered money to Simmons "in trust" and that Simmons' receipt and use of this money was an "activity [that] required a broker's license." I would remand the case to the trial court for further findings of fact on the sole issue presented on appeal.

---

cover a commission for obtaining a loan to refinance the defendants' ranch. After trial, judgment was entered against both defendants. Defendants appealed claiming, *inter alia,* that Bamford was barred from recovery because he had no real estate broker's license. The court of appeals affirmed finding that Bamford's actions in obtaining a loan for defendants did not require a license. Unlike the present case, *Bamford v. Cope* did not involve the purchase and sale of real estate and did not involve recovery under section 12–61–302(1).

5. The dissent states that: "There is no indication what facts the court relies upon to support its conclusion." The district court expressly found that:

> [T]he definition of "real estate broker" as defined in C.R.S. 12–61–101(2) ... is intended to be broadly defined to include the full spectrum of activities related to the purchase, sale, exchange, rental, or lease, of real property or an interest therein. Based upon the evidence as to transactions between Simmons and/or Red Rooster Realty, Inc., and each of the applicants, the Court finds Simmons and/or Red Rooster Realty, Inc., did engage in activities for which a real estate license is required and did undertake such activities in consideation and in anticipation of receiving compensation. The only evidence presented at trial was the agreements between Simmons, Red Rooster, and the Moellers and the undisputed testimony of the Moellers.

6. The Commission contends that under section 12–61–101(4)(g) and (i) the transactions are exempt from the license requirement. Although the Commission raised the argument before the trial court and court of appeals, neither court addressed the claim. In our view, the transactions between Simmons and the Moellers are not exempt from the licensing requirement under section 12–61–101(4)(g) and (i). Section 12–61–101(4)(g) exempts from the licensing requirement, *inter alia,* a person acting personally with respect to property owned by him. Section 12–61–101(4)(*i*) exempts a principal officer of any corporation only with respect to property owned by the corporation. In this case, the trial court found that Simmons acted not on his own behalf or on behalf of his corporations but on behalf of the Moellers. *See Johns v. Colorado Real Estate Comm'n,* 697 P.2d 410 (Colo.App. 1984) (section 12–61–101(4)(g) allows a private owner of real estate to sell the land without a license but, where claimants are defrauded by a broker who owns the real estate involved in the transaction, the statute cannot be used as a means to prevent recovery from the Fund); *Richards v. Income Realty & Mortgage, Inc.,* 654 P.2d 864 (Colo.App.1982) (same). According to the testimony of the Moellers, Simmons represented that he needed the Moellers' money to purchase from other parties land in the Larkin Subdivision and in Quail Run. This evidence further bolsters our conclusion that the transactions between Simmons and the Moellers are not exempt from the license requirement.

C.R.C.P. 52 states in part: "In all actions tried upon the facts ... the court shall find the facts specially and state separately its conclusions of law thereon." The trial court's written order notes that "monies were placed and delivered *in trust* to the Defendants and that said funds were converted or otherwise disposed of by Defendants contrary to the *specific purpose for which the trust funds* were deposited." (District Court Order at 1) (emphasis added). Based on this statement, the trial court concluded that the "Defendants' receipt of the trust monies in order to consummate real estate transaction with the applicants" was an activity which required a real estate broker's license. This legal conclusion rests on the trial court's unsupported holding that the Moellers' loans to Simmons were "trust funds."

A court's findings and conclusions should be sufficiently comprehensive to provide a basis for appellate review. *Commercial Claims, Ltd. v. Clement Bros. Co.*, 709 P.2d 88 (Colo.App.1985). The test is whether the court's findings provide a basis for the decision, and are supported by evidence. *Hipps v. Hennig*, 167 Colo. 358, 447 P.2d 700 (1968).

In this case, I do not believe that the trial court's findings are adequate. As the majority notes, the sole issue is whether "Simmons, in his dealings with the Moellers, 'performed acts for which a license is required'" under section 12-61-302(1). The written order summarily characterizes this transaction as resulting in a "trust," but makes no attempt to explain what facts it relied upon to arrive at this characterization.[1] The order also states that the defendants' use of the funds was "contrary to the specific purpose" for which the funds had been deposited, but the court does not clarify the "specific purpose" of the Moellers' agreement with Simmons, which is the heart of the issue. If the

specific purpose agreed upon by the parties was to enter into an investment loan—arranging for a loan secured by a deed of trust on real property—then Moeller has not engaged in acts for which a license is required. *See Bamford v. Cope*, 31 Colo. App. 161, 499 P.2d 639 (1972). If the specific purpose was to engage in a real estate transaction, the court must specify whether Moeller was acting as a real estate broker or acting "as principal in acquiring or in negotiating to acquire any interest in real estate." § 12-61-101(4), 5 C.R.S. (1985).

The documents signed by the Moellers bore the title: "Agreement for Investment Loans." As the petitioners note in their Opening Brief, "the terms and language contained on the various Investment Agreements were not consistent with the Moellers' understanding of the purpose of the funds given to Simmons by them." Opening Brief at 18. Yet, in its ruling the trial court made no findings as to whether the Investment Agreements controlled, whether the parties intended these to be investment loans or real estate purchases, whether Simmons was acting as principal in acquiring or negotiating real estate interests, and how these transactions created a "trust." For these reasons, I do not believe the trial court made sufficient findings under C.R.C.P. 52 and I would remand for findings on these questions. Further, there is no indication why the court of appeals' reasoning in *Bamford v. Cope*, 31 Colo.App. 161, 499 P.2d 639 (1972), should not be applied in this case. In *Bamford*, the court of appeals rejected the defendant-broker's argument that "arranging for a loan which is secured by a deed of trust on real property involves a transaction which is an exchange of 'an interest' in real estate," construing the predecessor to section 12-61-101. *Id.* at 164, 499 P.2d at 641.

---

1. The district court's order is unclear in certain respects. The judge first held that "Simmons and/or Red Rooster Realty, Inc., did engage in activities for which a real estate license is required." There is no indication what facts the court relies upon to support this conclusion. The next paragraph of the order states in part: "while the Court specifically may find grounds

for recovery on the basis of a conversion of trust funds, the Court just as well could find in favor of the applicants on grounds of fraud, willful misrepresentation, and deceit." I find it unclear exactly which statement was meant to be the court's holding, because no findings of fact were set forth to support these conclusions.

The trial court failed to find the facts specially as applied to its conclusion and order. I would remand to the trial court for further findings in support of its trust theory.