**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 21, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ACE AMERICAN INSURANCE COMPANY,

    Plaintiff/Counter Defendant - Appellee,

v.

DISH NETWORK, LLC,

    Defendant/Counterclaimant - Appellant.

No. 17-1140

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:13-CV-00560-REB-MEH)**
_____

Eric A. Shumsky, Orrick, Herrington & Sutcliffe, Washington, D.C. (Lee M. Epstein, Emily B. Markos, Weisbrod Matteis & Copley PLLC, Philadelphia, Pennsylvania, on the briefs) for Appellant.

Jonathan D. Hacker, O'Melveny & Myers LLP, Washington, D.C. (Thomas M. Jones, Terri A. Sutton, Cozen O'Connor, Seattle, Washington, and Christopher S. Clemenson, Cozen O'Connor, Denver, Colorado, with him on the brief) for Appellee.
_____

Before **LUCERO**, **McKAY**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

In this appeal we must decide whether the district court correctly held that

ACE American Insurance Company (ACE) has no duty to defend and indemnify

DISH Network (DISH) in a lawsuit alleging that DISH's use of telemarketing phone calls violated various federal and state laws. The primary question is whether statutory damages and injunctive relief under the Telephone Consumer Protection Act are "damages" under the insurance policies at issue and insurable under Colorado law, or are uninsurable "penalties." We conclude they are penalties under controlling Colorado law, and we affirm the district court's grant of summary judgment in favor of ACE.

## I.     BACKGROUND

### A.   Underlying Lawsuit

In April 2009, the federal government and the "State Plaintiffs" (the States of California, Illinois, North Carolina, and Ohio) sued DISH, alleging violations of the Telemarketing Sales Rule (TSR), the Telephone Consumer Protection Act (TCPA), and a variety of state laws ("Underlying Lawsuit"). Relevant here are the alleged violations of the TCPA,[1] which makes it "unlawful for any person [subject to a

---

[1] Most of the State Plaintiffs' alleged violations of the TSR and state statutes are not at issue because those claims require knowing violations of the law or request uninsurable civil penalties. A knowing violation of a statute is not covered by the policies, and Colorado public policy "prohibits an insurance carrier from providing insurance coverage for punitive damages[,]" *Lira v. Shelter Ins. Co.,* 913 P.2d 514, 517 (Colo. 1996). But DISH argues the California State Plaintiff's request that the court order DISH "to restore to any person in interest any money or property which [DISH] may have acquired . . . pursuant to California Business & Professions Code section 17203 or by violating section 17592" creates a duty to defend. *See* Aplt. App'x at 2052. We disagree. The California Supreme Court has held that "damages cannot be recovered" under these statutes and "plaintiffs are generally limited to [civil penalties,] injunctive relief and restitution." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003); *see also Bank of the West v. Super. Ct.*,

2

limited list of exceptions] . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B). The TCPA also permits states to "bring a civil action on behalf of its residents to enjoin such calls, an action to recover for actual monetary loss or receive $500 in damages for each violation, or both such actions." *Id.* § 227(g)(1). For each violation that is committed "willfully or knowingly," the statute allows for treble damages up to $1,500. *Id.*

In counts V and VI of the complaint in the Underlying Lawsuit ("Underlying Complaint"), State Plaintiffs assert violations of the TCPA, "seek a permanent injunction and other equitable relief," and allege "DISH Network's violations are willful and knowing." Underlying Complaint ¶¶ 71, 73, 75, 77, Aplt. App'x at 2042, 2043. The Underlying Complaint characterizes the injury by asserting "[c]onsumers in the United States have suffered and will suffer injury as a result of [DISH's] violations of the TSR, the TCPA, [and various state laws]. Absent injunctive relief by this Court, [DISH] is likely to continue to injure consumers and harm the public interest." *Id.* ¶ 97, Aplt. App'x at 2049. The prayer for relief requests the court to "[p]ermanently enjoin [DISH] from violating the TCPA, both generally, and specifically" and asks the court to award "damages of $1,500 for each violation of

2 Cal. 4th 1254, 1266 (1992) ("[D]amages are not available under section 17203."). Because the complaint fails to allege "any facts that arguably fall under the coverage of the policy" with respect to these claims, no duty to defend is triggered. *Blackhawk-Cent. City Sanitation Dist. v. Am. Guar. & Liab. Ins. Co.*, 214 F.3d 1183, 1188 (10th Cir. 2000).

3

the TCPA found by the Court to have been committed by [DISH] willfully and knowingly . . . [and] damages of $500 for each violation of the TCPA" the court finds was not willful and knowing. Prayer for Relief ¶¶ 4–5, Aplt. App'x at 2051. Finally, they request the court to "[o]rder [DISH] to pay the costs of this action, including costs of investigation incurred by State Plaintiffs," *id.* ¶ 16, Aplt. App'x at 2053, and to "[a]ward Plaintiffs such other and additional relief as the Court may determine to be just and proper," *id.* ¶ 17, Aplt. App'x at 2054.[2]

### B. Current Lawsuit

From 2004 through 2012, DISH contracted with ACE to provide two types of liability insurance: Coverage A and Coverage B. Under Coverage A, ACE has a duty to defend and indemnify DISH for "those sums that [DISH] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" that "is caused by an 'occurrence.'" Aplt. App'x at 164, 226. Under Coverage B, ACE has a duty to defend and indemnify DISH for "those sums that [DISH] becomes legally obligated to pay as damages because of 'personal and advertising injury.'" *Id.* at 168, 230. Additionally, Coverage B has an exclusion from coverage for "'[p]ersonal and advertising injury' committed by an insured whose business is . . . [a]dvertising, broadcasting, publishing or telecasting[.]" Aplt. App'x at 169, 231. Beginning in

---

[2] The underlying lawsuit reached final judgment on June 5, 2017. *See United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 991 (C.D. Ill. 2017) (hereinafter "Final Judgment"). The court awarded statutory damages under the TCPA, which it concluded was "a compensatory award fixed by Congress and d[id] not require proof of intent or motive." *Id.* at 950–51.

2006, both ACE policies incorporated a specific exclusion for violations of the TCPA that was not included in the 2004 and 2005 policies.

Upon receiving the initial complaint in the Underlying Lawsuit, DISH sought a defense and indemnification from ACE. ACE responded with a letter noting that there was no coverage for any of the asserted counts under Coverage A, but that there might be potential coverage under Coverage B for the counts alleging violations of the TCPA. The letter listed the possible exclusions that could result in a lack of coverage and "reserve[d] the right to deny or limit coverage on th[ose] bas[es]." Aplt. App'x at 2142. Following the filing of the second amended complaint, ACE again indicated potential coverage existed under Coverage B, but reserved its right to "address additional coverage issues as they may arise [during ACE's investigation of the claim] and/or decline coverage" if a determination of no coverage was made. *Id.* at 2164. In December 2013, ACE determined that DISH was entitled to coverage and issued a check for $913,650.

ACE later reversed its decision and filed a Complaint for Declaratory Judgment, seeking a declaration that ACE did not have a duty to defend or indemnify DISH in the Underlying Lawsuit. In response to the parties' cross-motions for summary judgment, the district court ruled ACE had no duty to defend under either Coverage A or Coverage B because "the ACE policies do not provide coverage for any of the claims asserted in the underlying suit." *ACE Am. Ins. Co. v. DISH Network* (*DISH I*), 173 F. Supp. 3d 1128, 1139 (D. Colo. 2016). Relying on the Colorado Supreme Court's decision in *Kruse v. McKenna*, 178 P.3d 1198 (Colo. 2008), the

5

district court concluded that the TCPA statutory damages were a penalty and therefore uninsurable under Colorado public policy. *Id.* at 1133–36. The district court also determined that the associated injunctive relief did not qualify as "damages" under the policies' definition. *Id.* at 1136–37. As an additional ground to support its decision, the district court held that DISH was in the business of broadcasting and thus precluded from coverage under Coverage B's broadcaster exception. *Id.* at 1137–38. Finally, the district court reasoned that, because ACE did not have a duty to defend DISH, it also did not have a duty to indemnify DISH. *Id.* at 1139.

## II.  DISCUSSION

"We review the district court's grant of summary judgment *de novo,* applying the same legal standards used by that court." *Blackhawk-Cent. City Sanitation Dist. v. Am. Guar. & Liab. Ins. Co.*, 214 F.3d 1183, 1187–88 (10th Cir. 2000). "Summary judgment should not be granted unless the evidence, viewed in the light most favorable to the party opposing the motion, shows there are no genuine issues of material fact and the moving party is due judgment as a matter of law." *Id.* at 1188. "Furthermore, the proper interpretation and construction of an insurance policy is a matter of law, and therefore we review the policies at issue *de novo* in order to determine whether they gave rise to a duty to defend." *Id.*

"When, as here, a federal court is exercising diversity jurisdiction, it must apply the substantive law of the forum state." *Id.* Both parties agree "the most recent statement of Colorado law [as articulated] by the Colorado Supreme Court" governs our interpretation of these policies. *See id.* If the Colorado Supreme Court has not

6

decided an issue, "we seek to predict how that court would decide the question." *Id.* "We review the district court's determination of Colorado law *de novo.*" *Id.*

### A. Colorado Insurance Principles

Before addressing the specific claims at issue here, we pause to review Colorado's insurance policy interpretation principles. "An insurance policy is a contract which should be interpreted consistently with the well settled principles of contractual interpretation." *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999) (citation omitted). "Our construction of the policy provisions must be fair, natural and reasonable rather than strained or strictly technical." *Vill. Homes of Colo., Inc. v. Travelers Cas. & Sur. Co.*, 148 P.3d 293, 296 (Colo. App. 2006) (internal quotation marks omitted), *aff'd,* 155 P.3d 369 (Colo. 2007). "Words used in an insurance policy should be given their plain and ordinary meaning unless the intent of the parties, as expressed in the contract, indicates that an alternative interpretation is intended." *Compass*, 984 P.2d at 613 (internal quotation marks omitted). "When faced with terms in an insurance policy that are not defined . . . such terms [must] be given their plain, ordinary meaning and interpreted according to the understanding of the average purchaser of insurance." *Id.* at 617. "When determining the plain and ordinary meaning of words, definitions in a recognized dictionary may be considered." *Hecla Min. Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1091 (Colo. 1991). "Courts should not rewrite insurance policy provisions that are clear and unambiguous." *Compass*, 984 P.2d at 613. "However, when a contractual

7

provision is reasonably susceptible to different meanings it must be construed against the drafter and in favor of providing coverage to the insured." *Id.* (citation omitted).

"Under Colorado law, an insurance carrier's duty to defend under a liability insurance policy arises whenever a complaint alleges any facts that arguably fall under the coverage of the policy." *Blackhawk-Cent. City Sanitation Dist.*, 214 F.3d at 1188. "The actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend." *Compass*, 984 P.2d at 613 (citation omitted). "Rather, the obligation to defend arises from allegations in the complaint, which if sustained, would impose a liability covered by the policy." *Id.* "[W]here the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, . . . the insurer must accept the defense of the claim." *Hecla,* 811 P.2d at 1089 (citations omitted). This duty exists even if "there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded." *Id.* "An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." *Compass*, 984 P.2d at 614. "In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove that it cannot." *Id.* (citation omitted).

"We determine the duty to defend on the same basis both before and after the completion of the underlying litigation to ensure that insurers that refuse to defend do not gain an advantage over insurers that establish their obligations before the

8

litigation has completed." *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 828 (Colo. 2004). "When resolving an insurer's obligations in an anticipatory declaratory action brought before the conclusion of the underlying dispute, an insurer's duty to defend is determined from the face of the complaint." *Id.* "Therefore, for insurers that refuse to defend, we similarly base their duty to defend on the face of the complaint." *Id.* "Determining the duty to defend based on the allegations contained within the complaint comports with the insured's legitimate expectation of a defense." *Hecla,* 811 P.2d at 1090.

## B. Damages Under the TCPA

Pursuant to the TCPA, State Plaintiffs in the Underlying Lawsuit sought statutory damages for willful violations, statutory damages for non-willful violations, and injunctive relief. (Unless otherwise indicated, we refer to statutory damages for willful violations and statutory damages for non-willful violations collectively as "statutory damages.") The district court determined that none of the damages sought were insurable under Coverage A or Coverage B. *See DISH I*, 173 F. Supp. 3d at 1133–38. The court reached this conclusion first by interpreting the term "damages" within the policies as "actual damages," i.e., compensatory damages for injury. *Id.* at 1133. The court then determined that the TCPA statutory damages were civil penalties not covered by the policies and uninsurable under Colorado law. *Id.* at 1133–36. Finally, the court held the policies did not cover the injunctive relief because they are "focused on preventing future violations [of the TCPA], not on remedying past violations." *Id.* at 1136.

9

## 1. Claim for Statutory Damages

DISH's first contention on appeal is that the district court erred in concluding the TCPA statutory damages for non-willful violations are penal under Colorado law because they represent liquidated damages, not punitive damages. Alternatively, DISH argues that even if the TCPA damages were a penalty, coverage would still apply because ACE did not exclude penalties from coverage. We conclude the TCPA's statutory damages are penal under Colorado law and, even if they were otherwise covered under the policies, Colorado's public policy prohibits the insurability of such penalties and bars coverage.

The Colorado Supreme Court has held that Colorado public policy prohibits "insuring intentional or willful wrongful acts." *Bohrer v. Church Mut. Ins. Co.,* 965 P.2d 1258, 1262 (Colo. 1998). "The purpose of the exclusion of intentional injuries from coverage is to prevent extending to the insured a license to commit harmful, wanton or malicious acts." *Am. Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 957 (Colo. 1991). Specifically, "[t]he public policy of Colorado prohibits an insurance carrier from providing insurance coverage for punitive damages." *Lira v. Shelter Ins. Co.,* 913 P.2d 514, 517 (Colo. 1996). Punitive damages are "intended to punish the defendant for his wrongful acts and to deter similar conduct in the future" rather than compensate the plaintiff. *Id.*

In *Kruse*, the Colorado Supreme Court considered whether the statutory damages available under the TCPA are assignable, or whether they are instead unassignable penalties. There, the plaintiff filed suit against the defendant, Douglas

Kruse, asserting that Mr. Kruse had sent three unsolicited facsimile advertisements to plaintiff's assignor. *Kruse*, 178 P.3d at 1199. After the court of appeals reversed the trial court's order dismissing the matter for lack of subject matter jurisdiction, the Colorado Supreme Court granted certiorari and requested briefing on the plaintiff's standing to bring the TCPA claim. *Id.* And because the plaintiff's standing was dependent upon the validity of the assignment, the question before the Colorado Supreme Court was whether an injured party could assign its right to collect TCPA statutory damages. *Id.* The answer turned on whether the TCPA damages were "punitive damages or penalties," which are not assignable under Colorado law, as opposed to compensatory liquidated damages, which are assignable. *Id.* at 1200. To determine whether the TCPA damages were punitive, the Colorado Supreme Court employed a three-part test looking at "whether (1) the statute asserted a new and distinct cause of action; (2) the claim would allow recovery without proof of actual damages; and (3) the claim would allow an award in excess of actual damages." *Id.* at 1201. "A statutory claim may be found to be a 'penalty' under this test even if it results in a damage award to an individual, rather than the state; this is because the damage award is serving the public interest in deterring or punishing the conduct at issue." *Id.* The Colorado Supreme Court determined that a claim for either non-willful or willful statutory damages under the TCPA is a claim for a penalty because the TCPA created a new and distinct cause of action, did not require proof of injury, and allowed damage awards that would always be greater than any actual damage suffered. *Id.*

11

DISH argues the *Kruse* test applies only when determining whether a statute is penal for purposes of assignability and should not be applied in the context of determining insurance coverage.[3] To support its argument that the TCPA is a penal statute only for assignability purposes, DISH cites to a case from the Western District of New York, applying federal common law. *See Hannabury v. Hilton Grand Vacations Co., LLC*, 174 F. Supp. 3d 768, 774 (W.D.N.Y. 2016). There, the court noted that "in contexts other than survivability of claims, other courts are split as to whether the TCPA is penal or remedial." *Id.* As examples, the court compared decisions holding, like *Kruse,* that for purposes of assignability, the statute is penal, with decisions from other jurisdictions holding that in the context of insurability, the TCPA is remedial. *Id.* The court then explained the rationale for treating the TCPA as remedial in the insurance context:

> [I]n these cases, insurance companies were arguing as follows: Because the TCPA is penal in nature, and because the insurance policies at issue did not cover penalty payments, they as insurance companies did not have to cover damages awards under the TCPA. Accordingly, if the courts . . . found that the TCPA was penal in nature, they would necessarily *also* be finding that the TCPA damages awards at issue were not covered by the policies. Such a finding would run directly counter to the general idea that courts should interpret insurance contracts to *include* rather than *exclude* coverage. In short, in the insurance context, there are policy considerations at play that counsel against construing

---

[3] Contrarily, in the Underlying Lawsuit, "Dish argue[d] that the [TCPA statutory] award is punitive." Final Judgment, 256 F. Supp. 3d at 951. DISH has also characterized the TCPA statutory damages as a penalty for statute of limitations purposes. *Warnick v. Dish Network, L.L.C.*, No. 12-cv-01952-WYD-MEH, 2013 WL 1151884, at *2 (D. Colo. May 19, 2013) (unpublished) ("Under Colorado law, Dish asserts that statutory damages such as those requested by Plaintiff under the TCPA are a penalty and must be commenced within one year after the cause of action accrues pursuant to C.R.S. § 13–80–103(1)(d).").

12

the TCPA as penal in nature. These policy considerations are not at play in the context of survivability of claims.

*Id.* at 774–75 (citations omitted). DISH asks us to adopt the reasoning of *Hannabury*, and to limit the reach of *Kruse* to the question of assignability. But absent a compelling reason to believe the Colorado Supreme Court would limited its holding in *Kruse* to assignability, we cannot depart from that decision.

It is true that the Colorado courts have not had occasion to apply *Kruse* in the context of insurance coverage. But the three-part test applied in *Kruse* was developed in the statute of limitations context and found equally applicable to the question of assignability. *Kruse*, 178 P.3d at 1201–02; *see also Ermentraut v. State Farm Fire & Cas. Co.*, No. 14-CV-00061-RM-KLM, 2016 WL 9735723, at *3 (D. Colo. Sept. 26, 2016) (unpublished) (applying the *Kruse* test to a statute of limitations claim); *Gerald H. Phipps, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 14-CV-01642-PAB-KLM, 2015 WL 5047640, at *1 (D. Colo. Aug. 27, 2015) (unpublished) (same). And our reluctance to assume the Colorado Supreme Court will limit its holding to these two contexts is heightened by the fact that other courts have read *Kruse* as holding broadly that the TCPA is a penal statute. *See Standard Mut. Ins. Co. v. Lay*, 989 N.E.2d 591, 600 (Ill. 2013) (characterizing *Kruse* as holding "that the TCPA-prescribed damages of $500 per violation constitute penal or punitive damages"). Although DISH cites a significant number of cases in which other jurisdictions have come to the opposite conclusion about the penal nature of the TCPA, "the question we must answer . . . [is] what *Colorado law* says on the subject." *Valley Forge Ins.*

13

*Co. v. Health Care Mgmt. Partners*, 616 F.3d 1086, 1091 (10th Cir. 2010) (emphasis added).

DISH also offers *Travelers Prop. Cas. Co. of Am. v. Dish Network, LLC* (*Travelers*), No. 12-03098, 2014 WL 1217668 (C.D. Ill. Mar. 24, 2014) (unpublished), as support for its argument that the Colorado Supreme Court will find the TCPA penal in the assignability context, but not for purposes of insurability.[4] In *Travelers*, the Central District of Illinois held that, under both Illinois and Colorado law, the TCPA statutory damages are remedial for purposes of insurability. *Id.* at *14–15. It reasoned that the Colorado Supreme Court in *Kruse* "never addressed the intent or wrongful acts of the parties," and thus concluded that *Kruse* "is not precedential on whether the Telephone Consumer Protection Act damages are insurable as a matter of Colorado public policy." *Id.* at *15. As discussed, however, we are not convinced that *Kruse* can be read so narrowly—at least by a federal court sitting in diversity. *Kruse*'s assignability analysis turned on whether a TCPA claim would "survive[] the death of the person originally entitled to assert the claim." *Kruse*, 178 P.3d at 1200. Under Colorado law, "punitive damages shall not be awarded nor penalties adjudged after the death of the person against whom such punitive damages or penalties are claimed." *Id.* (quoting Colo. Rev. Stat. § 13-20-101) (emphasis omitted). The Colorado Supreme Court ultimately held that: "[A]

---

[4] *Travelers* also involves the Underlying Lawsuit. There, DISH sought a declaration that a different insurance company, The Travelers Indemnity Company of Illinois, had a duty to defend and indemnify DISH based on the alleged TCPA violations. *Travelers*, 2014 WL 1217668, at *2.

14

claim under the TCPA for $500 in liquidated damages per violation [non-willful statutory damages] is a penalty that cannot be assigned," and "[f]or the same reasons, a claim for treble the amount of those liquidated damages [willful statutory damages] is also a penalty that cannot be assigned." *Id.* at 1201–02. In support, *Kruse* cited favorably to *U.S. Fax Law Ctr., Inc. v. T2 Techs., Inc.,* 183 P.3d 642 (Colo. App. 2007). In *T2 Techs.*, the Colorado Court of Appeals acknowledged that "courts in other jurisdictions have held that the TCPA is not a penal statute." 183 P.3d at 646. But it nevertheless held that even if the TCPA "affords remedial remedies that might be assignable in other circumstances," the "sums sought by the plaintiff in this action [willful and non-willful statutory damages] were penalties and, as such, were not assignable." *Id.* at 646–47. That is, Colorado courts focus on the precise TCPA remedy sought by the plaintiff, and where that claim is for statutory damages, the TCPA is treated as penal under Colorado law.

DISH next argues that, even if the TCPA's provision for willful and non-willful statutory damages is a penal provision, the statute's provision for actual monetary loss is a remedial provision insurable under Colorado public policy and sufficient to trigger the duty to defend. It is true that "[a] statute can be both penal and remedial in nature." *Front Range Christian Ministries v. Travelers Indem. Co. of Am.*, No. 16-CV-01923-PAB-CBS, 2017 WL 1148690, at *2 (D. Colo. Mar. 27, 2017) (unpublished) (*citing Moeller v. Colo. Real Estate Comm'n*, 759 P.2d 697, 701 (Colo. 1988)). Indeed, "[t]he Colorado Supreme Court has distinguished between penal and remedial remedies even when they arise from a single statutory section."

15

*Id.* (*citing Carlson v. McCoy*, 566 P.2d 1073, 1075 (Colo. 1977)). While "penalties in excess of actual damage are penal" and serve the public interest of deterrence, "recovery of the actual amount" of the damages suffered is remedial. *Carlson*, 566 P.2d at 1075. "The determination of whether a portion of the statute is penal or remedial depends on the facts of the case." *Front Range Christian Ministries*, 2017 WL 1148690, at *2 (*citing Moeller*, 759 P.2d at 701).

As discussed, when the Colorado Court of Appeals was presented with the argument that the TCPA has both penal and remedial components, the court determined that the actual relief sought by the plaintiffs—the statutory damages permitted by the statute—was penal. *T2 Techs., Inc.*, 183 P.3d at 646–47. So, even assuming the TCPA has remedial components that would be insurable under Colorado law, whether the plaintiffs have alleged any remedial damage is a fact-specific inquiry. DISH contends the State Plaintiffs have alleged remedial damages by asserting in the Underlying Complaint that they were "authorized . . . to obtain actual damages or damages of $500 for each violation" of the TCPA. Underlying Complaint ¶¶ 5–8, Aplt. App'x at 2028–30. Had the Underlying Complaint requested relief in the same way, DISH's argument might succeed; however, the prayer for relief specifically asks the court to:

> Assess against [DISH] and in favor of the State Plaintiffs damages of $1,500 for each violation of the TCPA found by the Court to have been committed by [DISH] willfully and knowingly; if the Court finds [DISH] has engaged in violations of the TCPA which are not willful and knowing, then assessing against [DISH] damages of $500 for each violation of the TCPA. . . .

16

Prayer for Relief ¶ 4, Aplt. App'x at 2051. This request does not ask, even in the alternative, for actual monetary loss. Instead, it explicitly seeks only statutory damages which, under *T2 Techs.* and *Kruse*, are not remedial. *See also Hannabury*, 174 F. Supp. 3d at 776 (stating that the plaintiffs' relief request for $500 in liquidated damages indicates the claim is penal, despite the fact the statute allows the plaintiff to sue for actual damages).

Finally, DISH argues that Colorado's public policy is inapplicable here because, at least for the claims committed unknowingly, prohibiting insurance does not serve the goal of preventing the insured from receiving a "license to commit harmful, wanton or malicious acts." Aplt. Br. at 52–53 (quoting *Bohrer*, 965 P.2d at 1262 (quotation marks omitted)). But Colorado law also prohibits insuring against punitive damages, *see Lira*, 913 P.2d at 517, and the Colorado Supreme Court has held that the TCPA's statutory damages are penal, *Kruse*, 178 P.3d at 1201. If a distinction is to be drawn between penal statutes that involve willful conduct and penal statutes merely designed to deter, as DISH argues, "that decision is [the Colorado Supreme Court's] decision to make, not ours." *Espinoza v. Ark. Valley Adventures, LLC*, 809 F.3d 1150, 1153 (10th Cir. 2016). "[I]t is not our place to expand [Colorado] state law beyond the bounds set by the [Colorado] Supreme Court." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1295 (10th Cir. 2017) (citation omitted). Our job is to "follow the most recent decisions of the state's highest court." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007). "[A]ny further development of the law on this point" is properly reserved for Colorado authorities.

17

*Russo v. Ballard Med. Prod.*, 550 F.3d 1004, 1023 (10th Cir. 2008). To be sure, the Colorado Supreme Court may decide, when actually faced with the question, that the TCPA is penal in some contexts, but remedial in others. But, "[a]bsent a strong showing to the contrary, we are disinclined to predict that the [Colorado] Supreme Court would recognize" such a distinction. *Belnap*, 844 F.3d at 1295.

In sum, the provision awarding statutory damages for violating the TCPA is a penalty under Colorado law and uninsurable as a matter of Colorado public policy. Therefore, ACE has no duty to defend DISH on these claims.

## 2. Claim for Equitable Relief

DISH next argues that the district court's interpretation of insurable damages as "actual damages" was improperly narrow because the Colorado Supreme Court has held "that the ordinary meaning of 'damages' is broad and covers" equitable relief. *See Compass*, 984 P.2d at 622–23. Therefore, DISH continues, the costs of complying with an injunction are insurable damages under the ACE policies.

It is true that the Colorado Supreme Court has refused to draw a bright line between legal remedies and equitable remedies. *Id.* But neither has it mandated that insurers absorb the costs of preventing future damages, and *Compass* does not suggest otherwise. In *Compass*, the Colorado Supreme Court held that "the plain and ordinary meaning" of the term "damages" included "government mandated response or cleanup costs" to remediate environmental pollution. *Id.* Critically, *Compass* dealt with the insurability of an equitable remedy intended to ameliorate already existing damage, not—as DISH requests here—an equitable remedy to prevent potential

18

future damages. *See Cutler-Orosi Unified Sch. Dist. v. Tulare Cty. Sch. Dists. Liab./Prop. Self Ins. Auth.*, 31 Cal. App. 4th 617, 629 (Cal. Ct. App. 1994) (finding injunctive remedies under the Voting Rights Act are "essentially prophylactic methods of preventing the future reoccurrence of past illegal actions" which cannot be classified as "damages"). Under the plain language of the policies, ACE is obligated to indemnify damages arising from *past* injuries, not the cost of preventing future violations. *See* Aplt. App'x at 164, 168, 226, 230 (requiring ACE to "pay those sums that [DISH] *becomes legally obligated to pay* as damages *because of* [injuries or damage] to which this insurance applies" (emphasis added)). Therefore, the injunctive relief requested by the State Plaintiffs does not constitute "damages" as defined by the ACE policies.[5]

Finally, DISH cites the Prayer for Relief's request for "other ancillary relief to remedy injuries caused by DISH Network's violation of the TCPA," and argues the State Plaintiffs have requested other equitable relief to compensate the victims for damages already incurred. Aplt. Br. at 36. But we will not interpret a boilerplate

---

[5] DISH also relies on the State Plaintiffs' request in their summary judgment motion to require that DISH "'hire[] a telemarketing-compliance expert . . . who will prepare a plan . . . [for] compliance' and an order requiring DISH to fully fund a claims administrator 'in order to identify and distribute damage awards to consumers in the Plaintiff States who received calls that violated the TCPA.'" Aplt. Br. at 36. This subsequent document, however, cannot be considered under Colorado's "complaint rule." "We determine the duty to defend on the same basis both before and after the completion of the underlying litigation. . . ." *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 828 (Colo. 2004). This determination is based "on the face of the complaint." *Id.* As this relief was not requested in the complaint, we do not consider it here.

provision seeking "other ancillary relief" so as to make it impossible for insurers to avoid a duty to defend, even when the asserted damages are expressly uninsured by the policy. Because the specific statutory damages and injunctive relief requested do not create any possibility that ACE would be obligated to indemnify DISH, it has no duty to defend.[6]

\* \* \*

As the "underlying claim [cannot] fall within policy coverage," *Compass*, 984 P.2d at 614 (citation omitted), ACE does not have a duty to defend DISH in the Underlying Lawsuit.[7]

### III.   CONCLUSION

We AFFIRM the district court's grant of summary judgment in favor of ACE.

---

[6] Because we conclude the plaintiffs in the Underlying Lawsuit have not asserted any insurable damages, we do not address ACE's alternative arguments that: (1) there was no coverage under Coverage A because the asserted damages were not "bodily injury" or "property damage" caused by an "occurrence" and (2) there was no coverage under Coverage B because DISH falls within the "broadcaster" exception.

[7] ACE also does not have a duty to indemnify DISH. *See Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 621 (Colo. 1999) ("[W]here there is no duty to defend, it follows that there can be no duty to indemnify." (citation omitted)).